# McCREARY *v.* PENNSYLVANIA CANAL COMPANY

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 54. Submitted October 22, 1891. — Decided November 9, 1891.

In estimating, in a suit for the infringement of letters patent, the profits which the defendant has made by the use of the plaintiff's device, where such device is a mere improvement upon what was known before and was open to the defendant to use, the plaintiff is limited to such profits as have arisen from the use of the improvement over what the defendant might have made by the use of that or other devices without such improvement.

~ n inventor took out letters patent for an invention intended to accomplish a certain result. Subsequently he took out a second patent, covering the invention protected by the first, and accomplishing the same result by a further improvement. While holding both patents, he sued to recover damages for the infringement of the second, without claiming to recover damages for the infringement of the first. *Held*, that he could recover only for the injuries resulting from use of the further improvement covered by the second letters, and that if no such injury were shown the defendant would be entitled to judgment.

THIS was a bill in equity for the infringement of letters patent number 129,844, issued July 23, 1872, and reissued as number 5630, October 28, 1873, to the appellant, John McCreary, for an "improvement in coupling and steering apparatus." In the specification of the reissue the patentee stated that his invention related " to certain improvements in devices for steering canal boats," etc., described in letters patent granted to Elijah and John McCreary, April 16, 1872, number 125,684, by means of which two boats are coupled together, and navigated and steered as one boat by means of a single steering-wheel. The invention described in said letters patent consisted, principally, "in coupling two boats together by means of a chain or rope passing around a steering-wheel on one boat, and around a system of sheaves or pulleys, and attached to the other boat, for the purposes of steering said boats as well as of coupling them ; and in centring said boats together and form-

ing a universal joint between them by means of an overhanging guard or bumper on the stern of the forward boat, with a central notch therein, into which the projecting stem or cutwater of the rear boat fitted." "My improvements," says the patentee, "consist, first, in coupling and centring said boats together and forming a universal joint between them by means of a chain, the two ends of which are fastened to opposite points on the stern of the forward boat and the central part to the stem or cutwater, or some central point on the bow of the rear boat, so as to hold its stem or cutwater against the overhanging guard or bumper of said forward boat, said chain serving to centre the boats without the necessity of any notch in the overhanging guard for the stem of the rear boat to fit into, and at the same time coupling and holding the boats together and forming a universal joint between them; second, in attaching the ends of the coupling and steering chains to the boats by means of crow-foot claw-hooks so as to render the chains easily adjustable, as hereinafter shown and described."

He claimed as his invention:

"1. The combination of the two boats A and B, the steering-chain $a$ passing around sheaves or pulleys, and around the windlass C, or its equivalent, the overhanging guard or bumper on the stern of the forward boat, and the chain D attached to opposite points on the stern of said boat and to the stem or central part of the bow of the rear boat, so as to form a universal joint between them, and keep them coupled and centred, substantially as shown and described.

"2. In combination with the boats A and B and the coupling and steering mechanism herein described, the claw-hooks $h$ $h$, for attaching and adjusting the coupling and steering chains, substantially as set forth."

Upon the hearing in the Circuit Court an interlocutory decree was entered in favor of the plaintiff, finding the validity of the patent, and the infringement by the defendant, and ordering a reference to a master for an account of the "profits, gains and advantages which the said defendant has received or made, or which have arisen or accrued to it" from the said infringement, etc., but denying the injunction upon the ground, stated

in the opinion of the court, *McCreary* v. *Pennsylvania Canal Co.*, 5 Fed. Rep. 367, that its allowance would cause much greater injury to the defendant than benefit to the plaintiff. A large amount of testimony was taken before the master, who reported that he found no proven profits, savings or advantages to have been received by or accrued to defendant from the manufacture, use or sale of the plaintiff's patented improvements. Exceptions were filed to this report, and upon the hearing of such exceptions a final decree was entered in accordance with the report, and that the plaintiff should recover his costs, except the costs of the accounting before the master, and the costs of the exceptions to the master's report, which were awarded to the defendant. The decree was subsequently amended by ordering that the defendant pay all the costs of the suit. From the decree denying the recovery of profits and damages an appeal was taken to this court.

*Mr. Charles Sidney Whitman* for appellant.

*Mr. S. S. Hollingsworth* for appellee.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

About three months prior to the patent in suit, and on April 16, 1872, another patent, numbered 125,684, was issued to Elijah and John McCreary, for "an improvement in steering devices for canal boats," etc., which covered a similar coupling together of boats, barges and scows by means of a vertical groove formed in the overhanging stern guard or bumper of the forward boat, which groove was entered by the cutwater of the rear boat, a chain being used for connecting the boats, which chain was so connected with a train of gear-wheels placed in the rear boat as to enable both boats to be steered by means of a windlass. The first claim of this patent was as follows:

"1. Two boats or barges, A and B, fitted together by means of a projecting cutwater fitting into a notch in an overhanging guard, as described, and coupled and steered by means of a

cnain or rope, having its ends fastened to the forward boat and passing around pulleys, . . . substantially as herein set forth."

. The second claim was immaterial.

In patent numbered 129,844 the patentee stated that his improvement upon the prior patent consisted "in substituting for the projecting cutwater and notch, described in said patent for centring the boats together, and forming a universal joint, a chain attached at both ends to one boat, and at its centre to a central point on the adjacent end of the other boat," etc.

One of the main difficulties in the assessment of damages in this case arises from the fact that the two patents, the first one of which is not included in this bill, describe a system of coupling together two boats by means of chains and a centring device much the same — differing from each other only in two particulars: First, in the earlier patent, the two boats are connected together by the cutwater of the rear boat fitting a groove in the overhanging guard of the forward boat; while in the later patent, there is substituted for this a chain attached by both ends to the forward boat, and at its centre to a central point on the adjacent end of the rear boat. Second, in the later patent, the centre of the chain is wound around a horizontal windlass, while in the earlier it is wound around a separate wheel geared to the windlass below the deck — a difference which it was not insisted was material. In this connection, the master found that "the combination of the patent in suit and that of the prior patent are practically identical in function and result, and are identical in constitution, save only as to one particular element, the 'centring' device. As, therefore, the combination of the patent in suit is one, the sole invention and novelty of which consisted of a single element, the profit which complainant is entitled to recover from the defendant in this case is that which he may have shown to have accrued to it from the use of substantially that new element in substantially the combination in which he has described and claimed it." Exception was taken to this finding, upon the ground that the finding contained an " erroneous construction of law,

if it means that the complainant is not entitled to recover the entire profits which have accrued to the defendant from the use of boats containing the invention described and claimed in the patent in suit because of anything shown or described, but not claimed, in said prior patent of the complainant numbered 125,684." Plaintiff claimed, and offered evidence tending to show, that defendant had made a large sum in "savings" by the transportation of coal in its infringing double boats in place of single boats, and asked that defendant should be held accountable to him for these savings (less the cost of applying the couplings to the double boats) as its profits from the use of this improvement.

The master found, however, in this connection, that complainant was not entitled, upon the proofs, to recover from the defendant as its profits from the use of his "improvement" the entire savings in freight accruing from the shipping of coal in the infringing coupled boats in place of single boats, but was restricted to such as were attributable solely to the improvement.

There is no doubt of the general principle that, in estimating the profits the defendant has made by the use of the plaintiff's device, where such device is a mere improvement upon what was known before, and was open to the defendant to use, the plaintiff is limited to such profits as have arisen from the use of the improvement over what the defendant might have made by the use of that or other devices without such improvements. This is a familiar doctrine announced by this court in a number of cases. *Seymour* v. *McCormick*, 16 How. 480; *Mowry* v. *Whitney*, 14 Wall. 620; *Littlefield* v. *Perry*, 21 Wall. 205; *Elizabeth* v. *Pavement Co.*, 97 U. S. 126; *Garretson* v. *Clark*, 111 U. S. 120.

The important question in this connection is, whether, in considering what was already known, and open to the defendant to use, we are to include the device shown in patent numbered 125,684, issued to Elijah and John McCreary about three months before the patent in suit. There were other methods of connecting vessels in train, such as were disclosed in the British patent to Taylor of 1846; the British patent to Bourne

of 1857; the patent to McCreary of 1860, constructed and put into use upon a coupled boat called "The Experiment;" the British patent to Bartholomew of 1862; and the American patent to Stackpole of 1866: but none of these seem to have been adapted to defendant's use with any advantage over single boats, because, as the master found, "their construction was such that a rudder could not be applied to the forward boat." He found, further, that "these prior boats were in other respects inferior to the machines of complainant's patent, but their fatal defect for defendant's purposes was this inability to apply a rudder to the forward boat, which was therefore unmanageable when separated from its mate."

There is nothing, however, to show that the device described in the patent of April 16, 1872, to the McCrearys, was not an operative device, and if it were open to the defendant to use, the plaintiff, in this action, would be limited in his recovery to the profits which the defendant made by the use of the improvement described in the second patent, over the device shown in the earlier patent. This improvement, as before stated, consisted principally in substituting for the projecting cutwater and notch, described in the earlier patent, a chain attached at both ends to one boat, and at its centre to a central point upon the adjacent end of the other boat. No attempt was made to distinguish or separate the profits arising from this improvement, the testimony being directed only to showing the profits defendant made by the use of coupled boats in the place of single boats. There was evidence tending strongly to show that the transportation of coal in double boats was more economically effected than in single boats, but none that the second patent was superior to the first. Indeed, the plaintiff admitted, in his argument, that the patent of April 16 described a plan of coupling and steering very little inferior to that described in the patent sued upon, and that, if defendant had pirated that invention instead of this, the same result in profits or savings would have been realized. Plaintiff, however, contended in this connection, that in determining the state of the art, or what was open to the defendant to use, the invention disclosed in the earlier patent to the McCrearys

should not have been considered, as this patent was also owned by John McCreary, the plaintiff, by assignment of Elijah's interest to him before the reissue sued upon was granted, and hence, that defendant had no more right to use this invention than the other. Had this earlier patent also been made the basis of suit in this case, this position would have been impregnable, but the question here is, not whether the defendant had in fact the right to use this patent, but whether, so far as this particular case is concerned, it had not that right. To hold that it had not is to assume that the plaintiff owned the earlier patent, that it was a valid patent and that defendant had infringed it. This was a question that could ot be raised upon an assessment of damages in this case. It is true the plaintiff claims to be the sole owner of this patent, that it described an invention both novel and useful, and that defendant had appropriated this device as well as the one set forth in the patent in suit; but these were issues which could only be determined upon a bill framed for this purpose, and could not be made the subject of contest in a collateral proceeding. For the purposes of this suit the master was bound to assume that this patent was open to the defendant, otherwise he might be led into inquiries entirely foreign to the subject of his investigation.

Suppose, for example, this patent had belonged to another person, and the plaintiff, foreseeing that the defendant would, upon this hearing, claim that it was open to him, had purchased it and taken an assignment of all claims for past infringements, could he in this way forestall such defence? Clearly not. In such case the defendant might justly reply: "I was summoned here to answer a charge of infringing your patent, and in case it is established to pay such damages as may be awarded for such infringement. But I could not anticipate that you would purchase another patent and set it up in aggravation of such damages." But if this could not be done pending the suit, it is difficult to see how it could be done before suit brought, if such patent be not made the basis of the suit. Had the defendant attempted to justify by setting up a device obtained subsequent to the date of the plain-

tiff's patent, a different question would have arisen. This question was considered by Mr. Justice Harlan, in *Turrill* v. *Illinois Central Railroad*, 20 Fed. Rep. 912, in which he held that in estimating the profits made by the infringer of a patent, the comparison must be between the patented invention and what was known and open to the public at and before the date of the patent.

The case of *Seymour* v. *McCormick*, 16 How. 480, while not exactly in point, is somewhat analogous to the one under consideration. This was an action at common law to recover damages for the infringement of certain improvements in reaping machines. There were three patents issued, in 1834, 1845 and 1847; the earliest of these patents had expired. The first count charged an infringement of the patent of 1845; the second that of 1847. The plaintiff, to avoid delay, consented to go to trial on the second count only, which was for an improvement upon prior patents, consisting chiefly in giving to the raker of the grain a convenient seat upon the machine. The court permitted the jury to assess the damages as for the infringement of the entire machine, defendant insisting that he was liable only for the damages occasioned by the infringement of the improvement — in other words, that the plaintiff had the right to recover as great damages for the infringement of the patent set forth in the second count as if he had proceeded upon both counts, and shown infringement of all the patents claimed. The case was removed to this court by writ of error, and the plaintiff in error argued that, for the purposes of that suit, the defendant had a perfectly lawful right to use the machine described in the patent of 1834, (which had, in fact, become public property,) and the improvements in the patent of 1845, and a large portion of those included in that of 1847. These covered the whole of the improved reaper, except what related to the seat, and its combination with the reel. He further claimed that, as the plaintiff had decided not to proceed on his patent of 1845, that was in effect public property; that by waiving any right to proceed upon the first claim of his patent of 1847, he had limited himself to the seat, combined with the reel; and that

the ruling of the court allowed the plaintiff damages to as great an extent as if the trial had been in a suit upon the old patents of 1834 and 1845, and upon the first claim of that of 1847 as well as the second, and was therefore erroneous. It seems that the defendant sought to attack the validity of the patent of 1845, but the evidence was ruled out; still the plaintiff was allowed to recover for the profits of the part of the machine covered by this patent, as if it had been included in the patent of 1847. This court adopted the reasoning of the plaintiff in error, reversed the judgment of the court below, and held that the plaintiff should be limited in his recovery to the damages occasioned by the infringement of the second claim ` the patent of 1847. "The jury," said Mr. Justice Grier, in the opinion of the court, "gave a verdict for nearly double the amount demanded for the use of three several patents, in a suit where the defendant was charged with violating one only, and that for an improvement of small importance when compared with the whole machine."

If plaintiff be unable to recover damages for the infringement of a patent originally included in a suit, but upon which he elects not to proceed, it is difficult to see how he can recover for the infringement of one not made the basis of any action at all. It is true that the combination of the earlier patent in this case is substantially contained in the later. If it be identical with it or only a colorable variation from it, the second patent would be void, as a patentee cannot take out two patents for the same invention. *James* v. *Campbell*, 104 U. S. 356. If it be for a different device, then plaintiff could not recover damages for its infringement without making it the basis of suit.

We think, therefore, that for the purposes of this suit the earlier patent must be deemed open to the defendant, and no damages having been proved for the infringement of the improvement under the later patent, considered separately, the finding of the court below was correct.

We do not wish to be understood as expressing an opinion, whether, if there had been an earlier patent for coupling vessels outstanding at the date of this infringement, and owned

by a third person, defendant could claim that the device described in such patent was open to it. In such case it might perhaps be held that the plaintiff was entitled to stand upon the *prima facie* validity of the earlier patent; and that presumptively the defendant would be bound to pay a royalty to the patentee, and, having elected to make use of the plaintiff's invention, would be bound to pay a like royalty to him. This question, however, is not presented in the case under consideration.

The decree of the court below must be

*Affirmed.*

MR. JUSTICE BRADLEY and MR. JUSTICE GRAY were not present at the argument, and took no part in the decision of this case.