DAVIS PRESSED-STEEL CO. et al. v. MORRIS BOX-LID CO.

(Circuit Court of Appeals, Third Circuit. May 25, 1897.)

No. 6, March Term, 1897.

PATENTS—LIMITATION OF CLAIMS—INFRINGEMENT—CAR AXLE BOX LIDS.

The Morris patents, Nos. 379,712 and 423.795, for car axle box lids, stamped out of sheet steel, and having self-securing springs, are limited by the prior art, including especially the Kinzer patent, No. 211,854, to the combinations shown, in each of which an essential feature is the bearing of the spring on the outside of the lid and the fitting of the lid to the journal box before the function of the spring is rendered active. These patents are, therefore, not infringed by the Davis device, in which neither of these features appear. 78 Fed. 129, reversed.

Appeal from the Circuit Court of the United States for the District of Delaware.

This was a suit in equity by the Morris Box-Lid Company against the Davis Pressed-Steel Company and Nathan S. Davis for infringement of certain patents for car axle box lids. The circuit court ren-

dered a final decree for complainant (78 Fed. 129), and defendants have appealed.

Francis T. Chambers, for appellants.

Otto R. Barnett and James H. Raymond, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

BUFFINGTON, District Judge. The Morris Box-Lid Company filed a bill in the circuit court of the United States for the district of Delaware praying an injunction against the Davis Pressed-Steel Company and Nathan S. Davis for infringement of three patents owned by it, viz. patent 211,854, granted February 4, 1879, to Jacob Kinzer; No. 379,712, granted March 20, 1888, to George W. Morris; and No. 423,795, March 18, 1890, to the same. These patents are for car axle box lids. After replication filed, complainant gave notice that its prima facie case would be made out without reference to the Kinzer patent, and that proceedings would be had for dismissal of the bill as respects it without prejudice. No such action was had, but thereafter the case was proceeded in with sole reference to the remaining patents. The court, adjudging claim 1 of the first Morris patent and claims 4 and 5 of the second were valid and infringed, decreed an injunction, and from such decree an appeal was taken, and is now before us. The case involves lids or coverings for boxes which are filled with waste saturated with lubricants, and incase the outer end of car axles. By the rapid motion of the railway cars on which they are fitted, and their proximity to the ground, such boxes are necessarily exposed to clouds of dust and flying dirt. The entrance of these foreign substances into the boxes is highly objectionable, as they injure the lubricants, cut the axles, and tend to produce hot boxes. Ordinarily, these lids were cast iron, and were kept in place by springs secured to them by rivets, but the strain upon such rivets was severe, and caused them to wear out soon. To repair a lid necessitated its removal from the box. As early as 1877, Morris, in his patent No. 192,524, had shown a sheet-steel lid, which wholly dispensed with rivets. It had two hinged extension pieces, which, with the box-hinged bar, formed a pintle joint, and between these extensions the lid took the form of a tongue or clamping spring, which rested on a bearing on the top of the journal box. In 1879, Jacob Kinzer, in his patent No. 211,854, already referred to as being owned by complainant, and originally one of alleged infringed patents in this bill, devised another method of dispensing with rivets. It consisted of a self-attaching spring. To this end he employed a cast-iron lid hinged to the box in the ordinary way. To hold it in place he used a flat steel spring with an inturned or right-angled lip at the lower end. The three bearing points of the spring were, as follows: The first was where the upper end rested on the box above the hinge; the second was a lip dropped from the upper end edge of a loop or keeper riveted transversely on the outer side of the lid, and the third was a raised transverse section in a groove or chan-

nel which extended from the said loop to a lip or handle at the lower end of the lid. This channel, as its name implies, had edge flanges, which prevented the spring from escaping laterally, and at its lower end a cross-section depression, flanked at its lower end by a raised lip, which latter served the double purpose of a handle to raise the lid and a stop for the spring. The other side of the cross depression was formed by the raised projection referred to, which latter served the double purpose of a third bearing point for the spring, and also of a lock to keep it in place. To place the spring in functional position, it was driven from the upper end, and its lower end forced over the cross section, the top of which formed the third bearing. Further driving forced the angled end into the transverse depression already referred to. Here the lip or handle prevented its further movement downward, while its angled end engaging with, or, as the

patent says, "locking against, the front receding side of the bearing, will prevent the spring from working endwise by jarring, so as to be freed from action." Kinzer's device was never commercially developed, as, indeed, was also the case with the device shown in the Morris 1888 patent in suit. Whether it could have been successfully manufactured and applied is problematical, but, apart from all other questions, the cost of construction, arising from the material used and the growing tendency to supplant cast iron with pressed steel, were in themselves sufficient to account for its nonuse. Still the teaching of the patent, its plain disclosure of the possibility—and practicability—of providing a box lid with a self-securing spring, and thus dispensing wholly with riveted springs, are facts of significant weight where a subsequent inventor claims as a pioneer to have first opened a road, rather than to have merely bettered and improved a pathway he found already existing.

We now turn to an examination of the Morris patent of 1888. The proofs show that Mr. Morris had been for many years engaged in the railway supply business, and, from an examination of the axle boxes in use, became convinced that something different was needed. He says:

"The journal box lids then used were being largely made of cast iron, were constantly broken and destroyed by the rough usage which they received from car inspectors; and because of their extreme weight,—running from seven to twelve pounds,—with a constant strain on the hinge bolt or pintle that secured the lid to the box, thereby frequently wearing the bolt so that it would break off, and allow the lid to drop by the roadside; and, even if this did not happen, the bolt would become so loose, because of this wear, as to allow dust and cinders to get under the lid and into the journal box."

In view of these facts he says: "I turned my attention to devising something more durable, practical, and economical (both as to weight and cost) in journal box lids." Before describing the Morris device, and measuring the advance therein shown, it may be well to quote the language of complainant's expert comparing the Kinzer and Morris devices. He says:

"The Kinzer box lid is also provided with a plate spring, which, as shown in Fig. 2, has a 'right-angled end.' The box lid has also a raised cross loop beneath or within which the spring is fitted. The lid, with this spring, is also combined with an axle box having a top bearing for said spring. These are the points of correspondence between the subject of claims of the first Morris patent and the structure shown in the Kinzer patent. The following are the differences: First, the Kinzer box lid is of cast iron, and is not 'stamped out of sheet steel' or other sheet metal; secondly, this cast-iron Kinzer box lid does not have a slot therein to receive the right-angled end of the spring, and said spring is not immovably held against longitudinal movement by any means. The Kinzer lid is, however, not destitute of means which are intended to hold the spring lengthwise in place as against certain forces, and what it has for this purpose are: First, the rising lip, l, which will securely hold the spring against downward movement (having reference to the position of the lid when closed); and, second, the slight curved elevation, e, below which the right-angled end of the spring projects, and which, according to the patent, is thought to be adequate to 'prevent the spring from working endwise by jarring, so as to be free from action.' * * * There being no slot or equivalent depression in the Kinzer box lid, the upper side wall of which positively holds the spring against endwise movement, there are, of course, no end walls of a slot for engagement with the ends of the lip on the spring for the purpose of

holding the lower end of the spring from lateral displacement. Other means are provided for this purpose in the Kinzer lid, consisting of the long, cast ribs i, i, which laterally confine the spring from the loop, H, to the lower end of said spring."

If this summary of the differences is complete, it would seem that the grounds for assigning a pioneer place to the second patent are, to say the least, somewhat meager. The use of sheet steel in lids had already been shown, and a stamped or pressed steel one was the natural outgrowth of mechanical advance. As bearing on the teachings and disclosures of Morris' patent, it should be noted that there was, among other lids in general use prior thereto, a cast-iron lid with a central raised hood at its upper end. A spring was riveted to its lower side, extended upward through the hooded space, and was seated over the axle at the top of the box.

Whatever the possible scope of the principle or mode of application of Morris' method, it is certain he only conceived the idea of applying it in two general lines: First, where the lid was hinged before the function of the spring was rendered active; and, secondly, locat-

ing the spring on the outer face of the lid.     This is clearly set
forth in the patent:

"The object of my improvement is to provide for holding the lid closed, and
permitting it to be opened by the simplest construction and application of the
spring thereto, so that the lid may be fitted to the pintle hinges and to the
faces of the journal box before the function of the spring is rendered active,
and by which I obtain a lighter and more durable cover, in which the par-
ticular improvement resides in the simple and effective provision for applying
the spring to the outer face of the lid, as illustrated in the accompanying
drawings."

In view of the statutory requirement that a patentee "shall par-
ticularly point out and distinctly claim the part, improvement, or
combination which he claims as his invention or discovery," these
statements are suggestive, where the claims are sought to be given
a meaning which would cover other methods and combinations, which
do not, and from the relation of their parts cannot, embody these two
declared objects "in which," as the patentee says, "the particular im-
provement resides." Turning to such description, we find a thin
sheet of steel or other suitable metal with corner projections to form
pintle-hinge eyes, which latter were found in the 1877 patent,—"a
loop, e, punched out so as to stand up from its outer face," and a
punched-out slot, both being in the middle line of the sheet. A
narrow steel spring is used, with a flat upper end, and a right-angled
projection, similar to Kinzer's, at the other, adapted to fit the slot.
The spring is applied to the lid by slipping its plain end under the
loop, and, after the lid is hinged, the spring is driven upward until
the angled lip reaches and is forced by spring tension into the slot,
where it seats itself. Meanwhile the upper end had passed over and
bears upon the curved top part of the box over the hinge, and causes
sufficient tension to press and hold the lid against the box face.
By this self-securing spring device the use of rivets was dispensed
with. Securing the loop by rivets instead of making it integral
with the lid is suggestive as an alternative construction. Wherein
does this device differ from Kinzer's? Clearly, it is a difference in
detail. It was a new type, but it was not the first of a new species.
To hold otherwise, to give a broad generic character to Morris' claim,
is to work its destruction, for Kinzer would then anticipate. The
state of the art is such that, to save Morris' claim, it must be limited
substantially to the combination shown. He made use of the same
securing loop as Kinzer; his spring is identical in form, bearing
point, functional purpose, and effect. What was new was his slot
and the lid material he used. Conceding that the change from the
gradual inclined side of the Kinzer depression to the abrupt shoulder
of the Morris slot involved invention, and as such is entitled to pro-
tection, yet the difference was not so radical as to stamp it as of a
pioneer character.

We next inquire whether the claim in question, viz.: "An axle-box
lid stamped out of sheet steel, with a raised cross loop and a cross
slot stamped therein, and a plate spring having a right-angled end,
and fitted within said loop and within said slot, combined with an
axle box having a top bearing for said spring, substantially as set
forth," is infringed by respondent's device. In the latter we have

a marked departure from that which Morris says was the object of his improvement. Instead of a device which could be fitted to the face of the journal box before the spring was made operative, we find Davis returned to the lines of the old method, which Morris condemned and sought to avoid, namely, where the spring was necessarily attached before the lid was fitted. So, also, instead of placing the spring on the outer, he put it wholly on the inner, side of the lid. Far from adopting, he avoided, the teachings of the Morris patent. His lid is of stamped steel of the type of the hooded cast iron which we have seen was in common use. He places his spring underneath the lid in the same position, and with the same functional action, as in that type, but dispenses with rivets. This is done by passing the outwardly right-angled end of the spring underneath a loop or stirrup riveted in front of a backing shoulder or projection. When the lid is clamped to the box, and tension obtained, the spring is self-secured. It is located on the lower side of the lid, and from the inherent nature of the device and the relation to each other of the elements employed, spring function cannot be secured after the lid is fitted,—methods utterly at variance with the expressed objects of the Morris patent. The invention disclosed to the public by that patent, the objects the inventor had in view, and the means he suggested for securing the desired ends, are all in accord with such construction of the claim as limits the cross loop to a place on the outside of the lid. Conceding the improvement was meritorious and patentable, yet, obviously, it was not of such a basic character as to block all further advance in the art by rendering tributary to its claims every subsequent device by which it was found possible to place a self-securing spring on an axle-box lid, for, as we have seen, he was not the first to do this himself. The Davis method shows an entirely different way of accomplishing the same general end. While his spring has three bearing points,—a point deemed of vital importance by the circuit court, but which, in our mind, is of no special moment, since all such springs must have three bearing points, and Kinzer had in substance shown these particular three before,— yet even these do not stand in the same relation to the other parts in combination in the Davis and Morris devices. The bearing function of the loop of the Morris device is not accomplished by the loop or stirrup of the Davis device, but by the interior shoulder of the hood; while the third bearing, which in the Morris is on the front shoulder of the slot, is in the Davis performed by the stirrup or loop instead. The latter has also the additional function of limiting the forward movement of the spring,—a function which the loop of Morris does not have, but the same is wholly performed by the slot. No such device, arrangement, or co-relation of parts as Davis' is disclosed in the Morris specifications. Its teachings are wholly away from, and not toward, the Davis type; and to subject the latter to its claims would, in our judgment, be to pervert the beneficent purpose of the patent law, which is to stimulate, not to retard, invention. We are clearly of opinion the court erred in decreeing infringement.

What we have said of the patent of 1888 applies in large part to the Morris patent of 1890, also in suit. Its teachings and trend were in the same general lines as its predecessor. We find the same form of spring in both, substantially the same bearing points, and the accomplishment of similar effect, viz. securing the "spring from the outside of the lid after the latter had been properly hinged in

place." The difference in detail consists in the use of a bulged or hooded lid, the form of which was old in cast iron but new in being made from pressed steel, and having a slot at its lower end, through which the spring entered. Apart from sheltering the upper end of the spring beneath it, the hood performed the same functional duty of a bearing point of the spring as the raised loop of the former patent. The seating of the spring still remained on the outside of the

lid. In view of the prior art, of which his own prior patent must be deemed a part (see James v. Campbell, 104 U. S. 382; McCreary v. Canal Co., 141 U. S. 459, 12 Sup. Ct. 40), the claims in question must be confined to combinations substantially embodying the specific elements claimed. Among the elements of such claims we find a bulge having a slot at its end, and a flat spring inserted through the slot. These elements or combinations of parts are lacking in respondent's device. We are of opinion infringement has not been shown. The decree of the circuit court is therefore reversed, and that court is directed to dismiss the bill.