FEDERAL TELEPHONE & RADIO CORP.
v. ASSOCIATED TEL. & TEL. CO. et al.

Civ. No. 872.

United States District Court
D. Delaware.

June 26, 1951.

E. Ennalls Berl (of Southerland, Berl & Potter), Wilmington, Del., Paul Kolisch, Edward D. Phinney and J. Pierre Kolisch, New York City, J. Bernhard Thiess, Thorley von Holst and Sidney Neuman (of Thiess, Olson & Mecklenburger), Chicago, Ill., for plaintiff.

Charles F. Richards (of Richards, Layton & Finger), Wilmington, Del., William H. Davis and George E. Faithfull (of Davis, Hoxie & Faithfull), New York City, and Casper W. Ooms (of Dawson & Ooms), and Thomas R. Mulroy (of Hopkins, Sutter, Halls, DeWolfe & Owen), Chicago, Ill., for defendants.

RODNEY, District Judge.

The complaint in this action, seeking a declaratory judgment, was filed on May 2, 1946, charging that Automatic, by certain advertisements, had threatened prospective purchasers of Federal's automatic telephone equipment with patent infringement

suits.[1] The Court of Appeals for this Circuit has held that a justiciable controversy was thus presented.[2] Subsequently leave was granted to Federal to file a supplemental complaint, covering automatic equipment not put in issue in the original complaint.[3]

On January 11, 1950, Automatic filed counterclaims asserting numerous patents against the plaintiff. After certain other preliminary steps this court entered an order on September 20, 1950, in accordance with an agreement of counsel for both parties, setting down certain limited issues for trial in October, 1950. Briefly these issues were whether certain patents of the defendants should be adjudicated invalid by reason of defendants' alleged neglect or delay in entering disclaimers of certain claims of those patents; whether certain patents of the defendants should be adjudicated invalid by reason of alleged double patenting; and whether Federal's installation of certain automatic telephone equipment in foreign countries constituted infringement of certain of the patents in suit. A further issue relating to the taxing of costs and award of attorneys' fees was specified in the order of September 20, 1950, but at the argument after the trial it was concluded that the latter matter should be deferred until a decision upon the other issues was rendered. Trial on the three issues above specified took place in October and November, 1950. Oral argument followed. On May 16, 1951, while these issues were still undetermined, Federal filed a petition alleging that in the course of certain pre-trial proceedings which had been had in connection with the trial of further issues that were scheduled for hearing in September, 1951, Automatic had changed its position regarding the proper scope and interpretation of the claims of patents in suit. Federal, accordingly, prayed, in effect, that it might be permitted to submit in evidence as part of its case on the first trial, certain depositions which had been taken in the course of these later pre-trial proceedings, and that the court might take these into consideration in determining the issue of infringement by reason of the foreign installations.

A hearing on this petition took place on May 29, 1951. Automatic there denied any change of position. At the hearing it was suggested that, inasmuch as it appeared that certain issues relating to the question of the proper interpretation of claims were present alike in the matters to be tried in September, 1951, and in the foreign installation issues previously tried, it might be advisable to postpone the determination of the infringement issues heretofore tried until after the trial in September, so that both parties might have a full opportunity to clarify their positions and remove, as far as possible, all doubts in connection therewith.

Under the circumstances, I have decided that this suggested course of action is the proper one and should be adopted. Counsel for both parties indicated at the hearing their acquiescence in this course. Accordingly, the present opinion and determination will be confined to the disclaimer and double patenting issues.

## I. The Disclaimer Issue.

In the order of September 20, 1950, this issue was framed in the following terms:

"The issue of (1) whether all of the claims of any or all of the following patents asserted in Counts 4 and 8 of defendants' counterclaims should be adjudicated invalid by this Court on the ground, as alleged by the plaintiff, the defendants unreasonably neglected or delayed to enter a disclaimer of any or all of the following claims of said patents respectively:
" * * *."

A list of these patents subsequently appears herein.

There is little or no dispute between the parties regarding the underlying facts pertinent to this issue so far as they have been brought to light by the evidence. Their differences seem to relate rather to the principles of law to be applied and to the

---

1. For convenience the plaintiff will be referred to as "Federal" and the defendants as "Automatic" in this opinion.

2. 3 Cir., 169 F.2d 1012, reversing D.C., 71 F.Supp. 877.

3. D.C., 88 F.Supp. 375.

conclusions to be drawn, factually and legally, from these underlying facts.

The starting point of this litigation was an advertisement inserted by Automatic in certain publications, in which it asserted that it owned over 1,600 patents and in which it warned prospective purchasers of automatic telephone equipment to investigate the patent situation relating to any equipment offered for sale to them. Subsequently this advertisement was interpreted by the Court of Appeals to mean that independent telephone operating companies were threatened with patent infringement suits if they bought and used automatic equipment manufactured by others than Automatic.[4] When Automatic filed its counterclaims in January, 1950, it asserted 85 patents against Federal. Federal's answer, filed about twenty days later, alleged that all these 85 patents were invalid for various reasons, and cited a large number of prior patents in connection with the alleged invalidating prior art.

At a pre-trial conference in April, 1950, counsel informed the court that they had agreed to the principle of having a series of separate trials relating to limited groups of patents or claims of patents. Some discussion took place as to which patents should be selected for the first trial, and as a result of the conference an order was entered on July 31, 1950, providing for the trial commencing on October 9, 1950, of patent No. 46, asserted in Count 8 of Automatic's counterclaim and patents Nos. 2, 7, 25 and 43, asserted in Count 4 of Automatic's counterclaim. Prior to the entry of this order Automatic had notified Federal that it intended to drop from certain counts of its counterclaims one or more claims of patents Nos. 14, (20), 21, (31) and 47.[5] Such notification was given with respect to No. 14 on April 7, 1950, and with respect to Nos. 21 and 47 on May 15, 1950. Disclaimers as to Nos. 14 and 21, which had expired respectively on July 25, 1949 and January 9, 1950, were filed on September 8, 1950. The disclaimer as to No. 47, which expires on April 29, 1952, was filed on June 14, 1950.

On August 1, 1950, Federal notified Automatic of the anticipatory prior art on which Federal intended to rely at the trial. On August 8, 1950, Federal was notified by Automatic that, in view of the notice of August 1, it would drop patents Nos. 43 and 46, and probably Nos. 2 and 7. As this action left only one of the patents out of those specified in the order of July 31, 1950, for trial, a further pre-trial conference was held on August 17, 1950, to determine what issues should be tried at the trial set for October. No conclusion was then reached, but as a result of further conferences among counsel, the parties agreed to an amendment of the July order and the amended order of September 20, 1950, previously mentioned, was entered in accordance with that agreement. Disclaimers as to certain claims of all four of the patents mentioned in Automatic's notification of August 8, 1950, were filed in the Patent Office on September 8, 1950. Of these four patents, No. 7 had expired on May 18, 1948, and the other three were due to expire at various dates in 1951 and 1952.[6]

---

4. 3 Cir., 169 F.2d 1012, 1016.

5. Patents Nos. 20 and 31 are not involved in the trial of this issue.

6. The following table, based upon one appearing in Federal's Main Brief, summarizes the data regarding dates of disclaimer, etc., and is here inserted for greater clarity:

| Patent No. | Date of Issue | Expiration Date | Date Automatic Notified Federal that patents would be dropped | Disclaimer Date |
|---|---|---|---|---|
| 2 (Re. 21,768) | 8/28/34 | 8/27/51 | 8/ 8/50 | 9/ 8/50 |
| 7 (1,805,726) | 5/19/31 | 5/18/48 | 8/ 8/50 | 9/ 8/50 |
| 14 (1,868,994) | 7/26/32 | 7/25/49 | 4/ 7/50 | 9/ 8/50 |
| 21 (1,894,090) | 1/10/33 | 1/ 9/50 | 5/15/50 | 9/ 8/50 |
| 43 (1,945,466) | 1/30/34 | 1/29/51 | 8/ 8/50 | 9/ 8/50 |
| 46 (1,990,677) | 2/12/35 | 2/11/52 | 8/ 8/50 | 9/ 8/50 |
| 47 (1,999,788) | 4/30/35 | 4/29/52 | 5/15/50 | 6/14/50 |

Federal contends that there was unreasonable neglect or delay in filing these disclaimers, and that the seven patents are therefore invalid in toto. It argues that the burden of proving that there was no such unreasonable neglect or delay is upon Automatic; that Automatic has failed to sustain this burden; and that in any event it is clear from the evidence that Automatic must or should have known of the invalidity of the disclaimed claims long prior to the actual time of the filing of the disclaimers, and that there was, therefore, unreasonable neglect or delay in their filing. Automatic takes the position, on the contrary, that it disclaimed promptly after knowledge of the invalidity of the claims was brought home to it, the longest delay in the case of patents which had not yet expired, being of the order of thirty days, and that inferences or suggestions of knowledge of invalidity of these claims that it allegedly must or should have had long prior to notification of invalidity by Federal, cannot override the positive testimony of its witnesses that Automatic had no such actual knowledge prior to the receipt of such notification.

The law relating to disclaimers is statutory in origin, and is based upon two enactments which appear as Section 65 and 71 of Title 35 U.S.C.A. The general purpose and effect of this statute is too well established to require prolonged discussion. Prior to its enactment the rule was that the invalidity of any part of the patent rendered the whole patent void. The statute was intended to modify that rule. As was said by the Supreme Court in Ensten v. Simon, Ascher & Co., 282 U.S. 445, 452, 51 S.Ct. 207, 209, 75 L.Ed. 453: "The statute [referring to 35 U.S.C.A. §§ 65 and 71] is remedial; the intent is to aid the inventor free from wilful default or intention to mislead the public by permitting him to avoid the consequence of inadvertence, accident or mistake through prompt disavowal of the apparent right to exclude others from something improperly included in the words of his

grant. * * * '* * * The question of unreasonable delay is a question for the court, upon the facts as found either by its own investigation or the verdict of a jury. Delay begins whenever the patentee becomes aware that he has claimed more than he has invented or described. In cases where the excess is not apparent at once upon the inspection of the patent by the patentee, the allowance of his claim by the patent office raises such a presumption in its favor that he may rely on its validity until a court of competent jurisdiction decides that it is broader than his real invention.' Robinson on Patents (1890), Volume II, page 284."

More recently in Marconi Wireless Co. v. United States, 320 U.S. 1, 58, 63 S.Ct. 1393, 1420, 87 L.Ed. 1731, it was said that "the purpose of the disclaimer statute is to enable the patentee to relieve himself from the consequences of making an invalid claim if he is able to show both that the invalid claim was inadvertent and that the disclaimer was made without unreasonable neglect or delay. Ensten v. Simon, Ascher & Co., supra."

The question here is at what time does the obligation to disclaim arise. As we have seen, the Supreme Court in the Ensten v. Simon, Ascher case adopted the statement of the general rule laid down in Robinson on Patents that "Delay begins whenever the patentee becomes aware" that the claim is invalid, added to which is the qualification that if the invalidity is not apparent at once upon inspection of the patent, the issuance of the patent raises a presumption of validity upon which the patentee can rely until there is a judicial determination to the contrary. In some cases decided after the Ensten case the broad statement has been made that a patentee is not obliged to disclaim any of his claims until they have been passed upon by the highest court to which the case could be taken, or at least until there has been a judicial determination that they are invalid.[7] However, the Supreme Court

---

7. American Morgan Co. v. Joy Mfg. Co., D.C., 31 F.Supp. 419; Pennsylvania Research Corp. v. Lescarboura Spawn Co., D.C., 29 F.Supp. 340, and cases there cited.

case of Marconi Wireless Co. v. United States, supra, has clearly demonstrated that the obligation to disclaim does not necessarily arise only after a judicial determination of invalidity. There one of the patents in suit was held to be void, on the ground that it contained an invalid claim which had not been made by the patent applicant "through inadvertence, accident or mistake", and which had been disclaimed only after unreasonable neglect or delay. One of the claims of the patent was disclaimed in part ten years after the issuance of the patent, but before the institution of litigation; in other words, there had never been any judicial determination of invalidity. The lower court found as a fact, and the Supreme Court sustained the finding, that the purported inventor had published a paper in 1890 (some fifteen years before the patent application was filed) in which paper he himself pointed out that certain of the matters subsequently claimed in Claim 1 of the patent were not even then new or unknown. The Supreme Court accordingly arrived at its conclusion of invalidity of the patent in the following words: "Fleming's paper of 1890 showed his own recognition that his claim of use of his patent for low frequency currents was anticipated by Edison and others. It taxes credulity to suppose, in the face of this publication, that Fleming's claim for use of the Edison tube with low frequency currents was made 'through inadvertence, accident or mistake', which is prerequisite to a lawful disclaimer. No explanation or excuse is forthcoming for his claim of invention of a device which he had so often demonstrated to be old in the art, and which he had specifically and consistently attributed to Edison. Nor is any explanation offered for the delay of the patentee—the Marconi Company—in waiting ten years to disclaim the use of the device * * *. For ten years the Fleming patent was held out to the public as a monopoly of all its claimed features. That was too long in the absence of any explanation or excuse for the delay, and hence in this case was long enough to invalidate the patent. * * *"

■ Federal has taken the position that the Marconi case has superseded the old cases and textbooks and that the rule to be deduced from it is that "when someone obtains a patent he is duty bound to make sure that that patent is valid, and if he doesn't do that or if he doesn't satisfy the court that he did all he could do to correct the invalidity, then his whole patent is invalid." I am unable to agree fully with these arguments. I find no suggestion or statement in that part of the Supreme Court's opinion dealing with the Fleming patent to the effect that it was applying any other than established principles of law. On the contrary, the Ensten v. Simon, Ascher & Co. case is cited by it at least twice, and it would appear that the Supreme Court intended to apply the principles of that case. I am of the opinion that the rationale of the decision is that the evidence established beyond question that the purported inventor knew in fact that certain matters claimed in the invalid claim were not new, and the invalidity was therefore entirely apparent as soon as the patent issued, and could then be cured, if at all, only by a prompt disclaimer. This does not constitute a departure from the general rule of the Ensten and other earlier cases, but simply applies that rule to the rather unusual situation in which it is clearly shown that the patentee had positive knowledge of the invalidity of his claim when the patent issued. It is true that the Supreme Court said in the Marconi case that the purpose of the disclaimer statute is to enable the patentee to relieve himself from the consequences of making an invalid claim "if he is able to show both that the invalid claim was inadvertent and that the disclaimer was made without unreasonable neglect or delay", citing the Ensten case. However, this statement must, I think, be read and understood in the context in which it is found, and must be taken to mean that in a case where it is established that the patent applicant had knowledge that matters claimed in the patent were not patentable, it is encumbent on him to show that the improper claim was made through inadvertence and that he took steps to disclaim promptly. I do not think that it would be reasonable to conclude that the

quoted words of the Supreme Court's opinion were intended to introduce a new rule of law to the effect that every patentee who disclaims a claim must later be able to prove that when he applied for the patent and it issued, he investigated fully the validity of the claims, and in that way be able to show that the improper claim was made through inadvertence and that the disclaimer was filed without undue delay or negligence. I feel unable therefore, to agree with Federal's argument that the Marconi case requires the patentee to disclaim promptly, not only after he in fact knew of the invalidity of the claims, but even as of a time when "he should have known" of such invalidity. On the contrary, the established rule, I think, has remained unchanged, and the obligation to disclaim arises only when there is actual knowledge of invalidity.[8]

■ The defendants introduced evidence through the person in charge of Automatic's patent department and other officers, to the effect that they did not become aware of the invalidating prior art in the case of each patent until shortly before a decision was reached to withdraw the claims involved. Federal, on the other hand, contends that it may reasonably be inferred from the known facts that Automatic must have been aware of the invalidity of the patents long before filing the disclaimers. Briefly, this contention is based upon the fact that the prior patents which were cited by Federal and which prompted Automatic to disclaim were in the files of Automatic's extensive patent library, and in some cases were patents under which Automatic was licensed or which Automatic even owned. While the reasoning of Federal in this connection is not without force, I am of the opinion that the suggested inference, viewed in the light of the positive testimony to the contrary, is not sufficient to overcome the effect of that testimony and to bring home to Automatic a long standing knowledge of the invalidity of the claims.

■ Was there any unreasonable delay in filing the disclaimers after Automatic admittedly became aware of the invalidity or probable invalidity of the claims? In the case of the patents which had not expired, the delay was of the order of thirty days. This does not seem unreasonable, and I am not prepared to hold it so.[9] In case of the expired patents, two of the disclaimers were not filed until the expiration of periods of four to five months. Automatic explains that this was due to uncertainty whether disclaimers of claims of expired patents could or should be filed. Certainly it must be doubtful whether a disclaimer need or can be filed, once the patent has expired.[10] The delay is, therefore, in my opinion, reasonably explained, and in any event, it is difficult to see how such delay could have operated generally to the prejudice of Federal or the public. I conclude, therefore, that there was no unreasonable neglect or delay in filing the disclaimers, and that the patents in question are not generally invalid for that reason.

■ Federal has also argued, in its discussion of this issue, that these patents contained invalid claims whose inadvertence was not established, and that Automatic did not even attempt to satisfy the court that the hundreds of claims retained in these seven patents are patentably distinguishable from the few claims which were disclaimed. These issues were not set for trial in the order of September 20, 1950, and there seems, therefore, to be no obligation on Automatic to meet them or any necessity for the court to consider them.

8. Schering Corp. v. Gilbert, 2 Cir., 153 F.2d 428, 433-54, and W. F. & John Barnes Co. v. International Harvester Co., D.C., 51 F.Supp. 254, 267, decided since the Marconi Case, appear to have reached the same conclusion.

9. See General Chemical Co. v. Standard Wholesale Phosphate & Acid Works, Inc., 4 Cir., 77 F.2d 230, 232, for discussion of permissible periods of delay.

10. Yale Lock Mfg. Co. v. Sargent, 117 U. S. 536, 6 S.Ct. 934, 29 L.Ed. 954.

542

## II.  The Double Patenting Issue.

The next issue is stated in the following terms in the order of September 20, 1950:

"* * * whether the following patents, or either of them, should be adjudicated invalid on the ground, as alleged by plaintiff, of double patenting:

| Friendly | 1,945,466 |
| Friendly & Burns | 1,894,090." |

These are the patents which have been already mentioned in the preceding section of this opinion as Nos. 43 and 21 respectively.  Federal's position is that these two patents claim the same inventions as were claimed in two other patents, referred to as the Ostline and Willis patents, which had expired before Automatic's acquisition of Nos. 43 and 21.[11]  The Ostline and Willis patents were issued to Automatic or one of its predecessors, and none of the claims in them were ever disclaimed by Automatic before their expiration.  Federal contends, therefore, that Nos. 43 and 21, being later patents, now owned by Automatic, for the same invention as Automatic's Ostline and Willis patents, are invalid by reason of double patenting, that is, on the principle that a second patent to the same patentee for the same invention as that covered by the first issued patent is void.

Automatic takes the position on the other hand that Nos. 43 and 21 are not in all respects for the same inventions as the Ostline and Willis patents, and that the rule of the double patenting doctrine is not applicable here because the later patents were not issued to the same inventors and hence there is no reason or basis for its application.

■ I shall first consider the question raised by the latter contention, as though it were admitted that the Ostline and Willis patents are for the same invention as Nos. 43 and 21.  Normally the question of double patenting arises when the second patent for the same invention is issued to the same inventor.  The general rule is that an inventor cannot obtain another valid patent for an invention which is secured to him by a prior patent.  This follows from the unquestioned principle that two valid patents for the same invention cannot be granted either to the same or to a different party.[12]  Where two patents for the same invention are issued to two different inventors, there being no factor of a subsequent assignment to the same assignee, the validity of one patent as against the other will presumably rest primarily upon the question of priority of invention.  Where the two patents are issued to the same inventor, there cannot properly be any question of priority of invention, and the second patent is ipso facto void, as there might otherwise be the possibility of an inventor extending his monopoly for a term of more than the seventeen years to which he may be entitled.[13]

■ Such appear to be the general principles.  The question here, however, is whether the defense of double patenting has any application where the patents, for the same invention, are issued to different inventors and subsequently come into the hands of the same owner by assignment.  Federal argues that as a matter of principle and authority, the defense of double patenting should be applied under such circumstances.  Federal says that if this were not so, a patent owner, by acquiring two patents which may have been issued for the same invention to different inventors, may go far towards assuring himself of a monopoly of the claimed invention for more than the permitted seventeen years.  For authority Federal relies on McCreary v. Pennsylvania Canal Co., 141 U.S. 459, 12 S.Ct. 40, 35 L.Ed. 817, which is said to have held that a patent issued solely to an individual was held void for double patenting on account of an earlier patent issued jointly to that individual and another.  Automatic, on the other hand, argues that the double patenting defense is limited to the situation where two patents for the same

---

11.  It is not claimed that either No. 43 or 21 represents an invention claimed by the other.

12.  Miller v. Eagle Mfg. Co., 151 U.S. 186, 197, 14 S.Ct. 310, 38 L.Ed. 121.

13.  See Miller v. Eagle Mfg. Co., supra, note 12.

invention are issued to the same inventor, and cites several authorities in support of its position.

Without discussing in detail all the authorities which have been cited on this issue, I think it sufficient to say that I cannot agree with Federal's contention. It is true that in McCreary v. Pennsylvania Canal Co., supra, certain language was used by the Supreme Court, which, taken in conjunction with the particular facts of the case, may appear to give some support to Federal's position. The first patent was there issued to John and Elijah McCreary; the second patent was issued to John McCreary alone, and he became the sole owner of the first by assignment. In the course of its opinion, the Supreme Court used the following words: " * * * It is true that the combination of the earlier patent in this case is substantially contained in the later. If it be identical with it, or only a colorable variation from it, the second patent would be void, as a patentee cannot take out two patents for the same invention. * * * " [141 U.S. 459, 12 S.C. 43] But there was no question of double patenting in that case, and there seems to have been no intent to place a patent assignee in the same category as an inventor and original patentee for purposes of applying the defense which is now known as double patenting. Miller v. Eagle Manufacturing Co., supra, was also cited by Federal in this connection. In that case the court stated at page 198 of 151 U.S., at page 315 of 14 S.Ct.: "The result of the foregoing and other authorities is that no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ; * * * ." There again the precise question with which we are here concerned was not before the court. Since its decision, the Miller v. Eagle case has been cited both in a case which, to some degree, supports the proposition for which Automatic contends here,[14] and in one case

stating the principle which Federal now urges upon the court.[15]

As far as the Supreme Court decisions are concerned, therefore, I am of the opinion that no definite holding is to be found in them that the defense of double patenting is available as against one who by assignment becomes the owner of two patents for the same invention.

Differing expressions of opinion or holdings on the question are found in the decisions of lower courts.[16] On consideration of the reasons underlying the double patenting defense, the conclusion and rationale of Judge Learned Hand's opinion in Van Heusen Products v. Earl & Wilson, D.C., 300 F. 922, 936, seem to me to be most cogent and compelling. There he said: "There is no case in the books to which I have been referred which holds that the defense of double patenting applies between two independent inventors, merely because one has taken an assignment of the other invention. Nor is there any reason on principle to hold anything of the sort. The assignment makes no difference; each patent standing precisely as if there had been none such. The earlier inventor should and will prevail, if the inventions are the same; if they are different, both ought to stand. The only reason whatever for the defense of double patenting is that, since the inventor is the same in each, the defense could not succeed that the inventor of the second was not the first inventor. * * * "

When two patents for the same invention are issued to two different patentees, each is free, generally speaking, to assert the validity of his patent. There seems to be little question that if one of the patents was assigned to the other patentee and he in turn assigned it to some third party, the defense of double patenting would not be available as against that third party. It would seem that the most that could be said is that upon equitable grounds the patentee who becomes the owner, by as-

---

14. In Waterbury Buckle Co. v. G. E. Prentice Mfg. Co., D.C., 294 F. 930.

15. In Luminous Unit Co. v. Freeman-Sweet Co., D.C., 249 F. 876.

16. Van Heusen Products v. Earl & Wilson, D.C., 300 F. 922, 936, and cases cited in footnotes 14 and 15.

signment, of another patent for the same invention, should be estopped from asserting the validity of both patents while he holds both. However, this would, I believe, be an innovation in the law for which there appears to be no clear sanction either in the statutes or reported decisions. In any event, the issue of priority of invention is as pertinent where the two patents, originally issued to two different inventors, come into the same hands, as it was when the patents were first issued.

Federal raises some question whether the inventors to whom these patents issued were independent and whether, therefore, this is a case to which the rule, as stated by Judge Learned Hand, may be applied. Federal's contention is that, since Automatic had a license under the Friendly patent applications, the two inventors were not independent. In my opinion, the fact that Automatic acquired a nonexclusive license under the Friendly patent applications does not justify the conclusion that the inventors were not independent. There is nothing to establish that Friendly was in fact an agent of Automatic or was controlled by it; and there is no need to consider whether or to what extent the double patenting defense would have been pertinent, if he had been. Furthermore, I do not understand it to be suggested that the circumstance of the granting of this license would preclude the raising or determination of the question of priority of invention as between the several inventors.

Having reached this conclusion with respect to the applicability of the double patenting defense, I think it unnecessary to pass on the question whether or not the Friendly and Friendly & Burns patents were for the same inventions as the Ostline and Willis patents. Clearly the result would be the same in either case, namely, that the two patents in question are not void by reason of double patenting.

One further point made by Federal is that the Friendly patent applications were kept in the Patent Office unduly long by dilatory tactics and are therefore invalid. This issue was not included in the Court's order of September 20, 1950, and is therefore not before the court for consideration or decision.

An order in accordance with the conclusions herein indicated may be submitted.