Blatchford, C. J.
This suit is brought on re-issued letters patent granted to the plaintiff June 1,1875, for an “improvement in billiard tables, ” the original patent having been granted to him, as the inventor, December 23, 1873. The specification says:
“Previous to my invention it has been customary, in the construction of billiard tables, to form the body of the table with vertical sides, extending downwards from lines a short distance within the outer edges of the cushion rails, or with what are generally designated as straight or vertical side rails; and, previous to my invention, nearly all billiard tables manufactured and used in this country have been made according to this plan. A great variety of designs in the finish and ornamentation, and in the shape of the legs, have been devised and carried into use, and many and great improvements, in the past few years, have been made in the construction of the beds, cushions, and details of the table, for which numerous patents have been granted to me and to other billiard table makers, until nearly all the requisites of a perfectly working and unique apparatus, or machine, appeared to have been attained; but one serious inconvenience and disadvantage still remained, in the shape of the body of the table. It was necessary, on account of the weight of the bed, and to provide for a sure and lasting support of the same, to have the side rails, or the body of the table, of considerable depth; and their arrangement in vertical planes, extending downward the requisite distance, has proved a source of great disadvantage to the player, in preventing him from assuming a position with his leg nearest the table, by which he might be enabled to place and conveniently hold his bridge hand as far over on the bed table, or as far away from the cushion, as possible, in the execution of shots in which the cue ball rests far from the cushions, and thus avoid the use of the bridge, which, to most players, is objectionable, and which it is of great advantage to dispense with as much as possible.
“It had also been customary, previous to my invention, to *208 make billiard tables with the sides of the body run under, somewhat after the fashion of what are known as ‘French’ tables or ‘ ogee ’ tables; but in all this kind of tables the sides or broad rails have been so formed and so arranged relatively to the extreme upper edge of the table, or to the edge of the cushion rail, that the lower part of the sides, or that portion likely to be on a level with the bended knee of the player, obstructed the advance, leg of the player; besides which objection the legs of the table were not placed far enough under to be always entirely out of the way of the players’ feet, and the curved or ogee form of the sides rendered the manufacture of such tables very expensive. My invention has for its object to overcome all these objectionable features in the structure and form of the table, and to provide a billiard table, which, while it shall be equally as strong and durable in construction as either of the kinds heretofore made, and equally as desirable in' all other respects, shall embody the great advantage of having its broad rails (or the lower portion of its sides) and feet so located as to be always entirely out of the way of the legs and feet of the player, and so as to permit the player to place his bended knee as far under the cushion raü and table bed as may be necessary to effect the placement of his bridge hand as far as possible from the cushion, and, at the same time, properly support his center of gravity or maintain his equilibrium; and to these ends and objects my invention consists in a billiard table in which the broad rails are so bevelled or inclined under, and so arranged with the cushion rails (or edge of the table) and the table bed, that while the latter shall be properly supported the broad rails shall always be out of the way of the player’s bended knee, as will be hereinafter more fully explained.
“To enable those skilled in the art to make and use my invention I will more fully explain the construction and operation thereof, referring by letters to the accompanying drawings, in which figure 1 is a side elevation, and figure 2 a vertical cross section of a billiard table, made according to my invention. The bed B, the cushion rails G, with their *209 attached cushions e, and the legs a, which support the body of the table, are all made in about the usual most approved manner; but the side rails, /, or sides of the body of the table, are made and arranged, as seen, in an oblique, in lieu of the usual vertical, or nearly vertical, position, their upper edges being located as far under the table, and away from the cushion rails, as they can be placed, and afford a proper support to the edges of the slabs composing the bed.
“The figure represented by the body thus formed is that of an inverted frustrum of a pyramid, instead of being about rectangular in its appearance, as in most of the tables heretofore made. The sides, /, should be bevelled or inclined inward, as they descend from the cushion rails or under side of the bed, at about an angle of from 30 to 40 degrees, or quite sufficiently to permit the player to place his leg in the proper position for reaching as far as possible with the bridge-hand, but no further than is necessary for this purpose; because, if the angle or flare be increased, the structure is proportionately weakened, the capacity of the body or plane to sustain vertical strain being lessened as such inverted frustrum-mural frame is flattened out. At figure 2 I have illustrated part of a player’s figure, to show the convenient and advantageous position which the player may assume in playing, and which position it would be utterly impossible to assume were the sides, /, extended down in the usual manner, about vertically.
“It will be seen that the bevelling of the sides or broad rails of the table, as shown and described, permits the player to so extend his bended knee under the table, and so place his foot and posture himself, as to maintain his equilibrium perfectly while reaching over the table to make his bridge; and that the arrangement of the bevelled sides with the bed and cushion rails, as shown and described, renders the support of the bed as perfect, and the whole structure as durable, as in tables made with the old-fashioned vertical broad rails. Any one skilled in the art appreciates the importance of affording the best possible support to the bed throughout the whole extent of the plane of the table, so that it will not get out of level. It will also be seen that while, in a table made *210 according to my invention, the body will be equally as strong as, if not stronger, (with the same amount of material,) than a table made the old way, by the convergence of the sides, /, as they descend, the legs, d, are brought further under the table, and more put of the way of the player’s feet. The construction of such a table as herein shown and described is no more expensive than one with the vertical sides, and may be ornamented and elaborated to the same extent that other tables can be, while at the same time the inclination or obliquity given to the sides, and the consequent location of the legs further under the table, give to the whole machine or contrivance a lighter and more beautiful appearance.
“It will be understood that the angle of inclination of the sides, /, may be varied somewhat from the position or inclination shown, without departing from the spirit of my invention, the gist of which rests in the idea of having the planes of the broad rails, /, so inclined or bevelled under as to permit the placement of the player’s leg and foot as I have explained, and so combined and arranged with the bed and cushion rails of the table as to afford the most effectual and .permanent support of the bed by the said broad rails. I am aware, as I have already remarked, that previous to my invention what are commonly known as French tables have been made and used; but my invention should not be confounded with any such construction of table, which differs materially from my improved billiard table in these essential and material particulars, among others, viz.:
“First. In the French (or ogee) tables the sides of the body, or those parts corresponding to what are called in American tables the broad rails, were so combined and arranged with the cushion rail and bed that the lower portions of the body (that part on about a level with the bended knee of the player) were not located any further under the table, and out of the way of the player, than were the lower portions of the bodies of the old-fashioned, vertical-sided American tables.
“Second. On the French tables the curved form, or the ogee shape of the body, rendered the cost of the construction so great that the manufacturer of such tables could not compete *211 with the manufacturer of either the plane vertical-sided tables or my improved bevel tables.”
The clause is as follows: “In combination with the bed and projecting cushion rails, the bevelled sides or broad rails /, the whole constructed and arranged substantially in the manner and for the purposes described.”
Infringement is proved and is not contested. The defences insisted on are that the patent is invalid because the plaintiff was not the original and first inventor of the combination claimed in the patent, because the same invention was described by him in a prior patent, and because the invention claimed was not, in itself, a patentable invention. The original patent of December 23, 1873, was applied for January 16, 1872.
On the sixth of June, 1871, letters patent were issued to the plaintiff for a design for a billiard table. The specification says: “My invention relates to a new shape and design for billiard tables. Previous to my invention billiard tables have generally been made with the sides to extend down vertically from the lower side of the rail. In this shape, since the body of the table has to be rather deep to give strength to it, it is rather inconvenient for the player to get his leg in a position which will enable him to reach over the table, and hence this form of construction is objectionable. This objection has, I believe, been partially overcome by a design of some of the French tables, the deep side pieces of which run downward in a sort of ogee form; but this shape, composed of curved surfaces, renders the cost of manufacture of the table much greater than is compensated for by the advantage of greater convenience to the player. I propose, by my design, to overcome the difficulty found in the shape of body or sides, as the tables have been generally made, and render the design and appearance of the table much handsomer; while, at the same time, the cost of manufacture shall not be increased at all. In the accompanying drawing I have shown, in elevation at figure 1, and in vertical cross section at figure 2, a table of my new design or shape. In the drawing, A is the body or main frame of the table; B, the bed; c, the *212 cushion rails; d, the legs; and e, the cushions; all of which are made about as usual, except that the main frame is made so that the sides of the body of the table run under or flare at about an angle of 30 or 40 degrees, as shown at /. The inclined sides, /, it will be seen, are perfect planes, so that the expense of getting out the stuff and putting together, and the veneering, is no more than in the manufacture of the vertical sided tables now generally made. The inclined or flared sides, /, may be ornamented, panelled, etc., to any desired extent. By reference to the figure drawn at figure 2 it will be seen that the player can so extend his leg" under the table, when made as shown, as to enable him to reach further over the bed, which is a great convenience, and enables the player to easily reach many shots, which, on the table as now made, have to be played with the bridge.”
The claim is in these words: “The design for billiard tables, as herein shown and described.”
The specific defence set up in the answer, in connection with the design patent, is that the invention patented by the mechanical patent was described in the design patent before it was invented by the plaintiff. What exact defence is intended by this statement it is difficult to see. In argument it is contended for the defendant that, as the mechanical patent was issued December 23, 1873, more than two years after the issuing of the design patent, which was issued June 6, 1871, the mechanical patent is void because the original mechanical patent describes and claims the same thing which is described in the design patent. The application for the mechanical patent was filed January 16, 1872. The statutory defence allowed by section 61 of the act of July 8,1870, (16 U. S. St. at Large, § 208, now § 4920 of the Revised Statutes,) is that the thing patented “had been in public use or on sale in this country for more than two years before the patentee’s application for a patent, or had been abandoned to the public.” No such defence is set up in the answer, nor is any such defence proved by the evidence. The fact that the original mechanical patent was issued more than two years after the design patent is of no importance. The claim *213 of the design patent is a claim to shape. The claim of the re-issued mechanical patent is a claim to a mechanical combination. The shape of the structure may be the same as the shape in the design patent, but the subject-matter of the two claims is not the same. The shape covered by the claim of the design patent may be attained without following the mechanical combination claimed in the re-issued mechanical patent.
It is apparent, from the evidence, that there is sufficient utility and advantage in the structure with the broad side rails made of bevelled or inclined planes, in the way of cheapness of construction, as compared with a curved or ogee form, to support the patent. For the same reason the prior structures, which did not have the broad side rails made of bevelled or inclined planes, but had them curved or ogee in form, are not-an anticipation of the claim of the re-issued mechanical patent. But the evidence of Daniel ,D. Winant and of Strong Y. Moore is sufficient to show the prior existence of billiard tables containing the combination covered by the plaintiff’s re-issued patent. I refer to the bevelled tables which Winantsays he repaired in New York, and which were imported tables, and were made like any other table, except that the-broad rail was bevelled, the cushion rail projecting over the bed of the table, and the bed projecting over the frame. I refer also to the billiard tables constructed like the defendants’ infringing tables, which Moore saw in New York nearly 50 years ago, the broad rail being a straight bevel, made of flat plank and veneered. These former tables appear to have gone out of fashion, and been replaced by the vertical-sided tables, and then to have come into repute again. It is apparent, from the evidence, that in these former tables, so testified to by Winant and Moore, not only did the bevelled plane of the broad rails place the broad rails and the legs out of the way of the player’s knee, but the arrangement of the broad rails with the cushion rail and the table bed was such that the table bed was properly supported, the cushion rail projecting over the bed.
I do not deem it necessary to refer to any of the testimony *214 as to other prior tables, or as to drawings of prior tables, as it results from the foregoing considerations that the bill must be dismissed, with costs.