EASTERN PAPER-BAG Co. and others *v.* STANDARD PAPER-BAG Co. and others.[1]

*(Circuit Court, D. Massachusetts. February 17, 1887.*

1. PATENTS FOR INVENTIONS—PROCESS FOR MAKING PAPER BAGS.
    Letters patent No. 258,272, granted May 23, 1882, to the Eastern Paper-bag Company, assignee of Daniel Appel, for a process of making paper bags, the object being the production in a novel manner of a satchel-bottom paper bag, made from a strip of paper folded to form a tube, by first forming a diamond fold, then cross-folding the leading corner of the diamond fold, and subsequently cross-folding the rearmost corner of the diamond fold, to form the last cross-fold of the bag bottom, and, together with it, the main body of the bag-blank, on the line of the second cross-fold, *held,* in view of the prior state of the art, not void, as lacking patentable invention.

2. SAME—PROCESS.
    A process may be patentable irrespective of the particular form of instrumentalities used.

3. SAME—DESCRIPTION OF PROCESS IN APPLICATION.
    Description of a process in an application for a machine patent does not constitute an abandonment or dedication to the public of such process, so as to estop the inventor from subsequently obtaining a patent for the process, if applied for in two years.

[1]See 29 Fed. Rep. 787

4. SAME—MACHINE MADE CAPABLE OF WORKING PROCESS.

Where the defense to a suit for the infringement of a patent process is that machines embodying the process claimed were sold and in public use more than two years before the date of the application for the process patent, such defense is not sustained by proof that the use made of the machine before that date was experimental only, and not capable of working the process. There is no real invention of a process until a machine is constructed to work the process.

In Equity.

*Frederick P. Fish,* for complainants.

*Chauncey Smith,* for defendants.

COLT, J. The patent in suit, No. 258,272, is for a process of making paper bags. It was granted May 23, 1882, to the Eastern Paper-bag Company, assignee of Daniel Appel, the inventor. This invention has for its object the production in a novel manner of a satchel-bottom paper bag, made from a strip of paper folded to form a tube; and it consists in first forming the diamond fold, then cross-folding the leading corner of the diamond fold, and subsequently cross-folding the rearmost corner of the diamond fold, to form the last cross-fold of the bag bottom, and, together with it, the main body of the bag-blank, on the line of the second cross-fold. This, in substance, is the language of the specification and of the claim. In former machines, in order to give the rearmost corner of the diamond fold the forward bend necessary to form the second cross-fold, there was loss of time and power. To overcome this difficulty, Appel turns over the whole bottom of the bag after the leading corner of the diamond fold is cross-folded, and the rearmost corner of the diamond fold is cross-folded in the operation of folding over the body of the bag-blank on the line of such second cross-fold. The fold of the body of the bag-blank is called a "blindfold," and is incident to the formation of the satchel bottom by the Appel process. By this simple invention the leading and rearmost corners of the diamond fold of a bag-blank are cross-folded in directions which appear opposite to each other, by movements which are in the same direction, whether performed by hand or by machinery. To make paper bags commercially successful, a machine must be run with rapidity. Since the invention of Appel, it is difficult to assign any limit to the speed with which paper bags can be made.

That a process may be patentable irrespective of the particular form of instrumentalities used, cannot be disputed, (*Cochrane* v. *Deener,* 94 U. S. 780;) and I have no doubt that the claim of the Appel patent describes a patentable process, if what he describes constituted invention. On this point it is urged that all Appel did was to fold the body of the bag with the flap in making the second cross-fold, and that this was no invention, but is within the common knowledge and skill of everybody. I cannot adopt this view. To be sure, now that we see it done, it seems a very simple thing in making the second cross-fold to fold over the body of the bag with the end, but it was not thought of for years, and it may almost be said to have revolutionized the art of making paper

bags.  The most marked improvements in the arts are often the simplest, when once discovered.  In considering the history and development of the art of making paper bags, and the effect produced by the Appel process, I cannot but regard it as a patentable invention.

But it is said that the description of this process found in the Appel machine patent of August 31, 1880, operates as an abandonment of any claim Appel might have had for a process patent.  The patent in suit was applied for September 29, 1881.  The process forming its subject-matter was described, but not claimed, in the machine patent by the same inventor, dated August 31, 1880.  A little more than a year elapsed between the date of the prior description and the date of the application for the patent in suit.  Under these circumstances, has the invention been abandoned to the public?  The language of the supreme court in *Miller* v. *Brass Co.*, 104 U. S. 350; *James* v. *Campbell*, Id. 356; and *Mahn* v. *Harwood*, 112 U. S. 354, 5 Sup. Ct. Rep. 174,—is cited as sustaining the proposition that the omission of Appel to claim his process invention in the machine patent was in law a dedication of that invention to the public.  The supreme court in these cases was dealing with the subject of reissues under the statute.  In this case we are not dealing with the law of reissues.  Appel could not have secured his claim to a process by reissuing his machine patent, because it is not for the same invention. *Powder Co.* v. *Powder-works*, 98 U. S. 126; *Eachus* v. *Broomall*, 115 U. S. 429, 6 Sup. Ct. Rep. 229.  The question we have to decide is whether the description of another invention in a prior patent by the same inventor forfeits his right to take out a subsequent patent for such invention.  I do not understand that the supreme court have held that such prior description is a dedication to the public of the second invention. The invention of a machine, and a process employed in the use of the machine, being different things, it is difficult to see how the application for a patent on one should operate as an abandonment of any claim to a patent on the other: provided, of course, the application for the second patent is made before the statutory forfeiture of two years' prior use has run.  This view is in harmony with the decisions of the circuit courts where the question has arisen.  *Vermont Farm-machine Co.* v. *Marble*, 19 Fed. Rep. 307, 20 Fed. Rep. 117; *Graham* v. *McCormick*, 11 Fed. Rep. 859; *Graham* v. *Geneva Lake C. Manuf'g Co.*, Id. 138; *McMillan* v. *Rees*, 1 Fed. Rep. 722; *Hatch* v. *Moffitt*, 15 Fed. Rep. 252; *Cahn* v. *Wong Town On*, 19 Fed. Rep. 424; *Collender* v. *Griffith*, 18 Blatchf. 110, 2 Fed. Rep. 206.  The patent in suit having been applied for within two years from the date of the machine patent, there was no abandonment of the second invention, though a description of such invention was found in the prior patent.

We come now to the last defense, that machines embodying the Appel process were sold or in public use more than two years prior to the date of the application for the process patent, September 29, 1881.  This question is not free from difficulty.  The complainants maintain that there was no such sale or public use as would bring them within the statute.  Their position, in brief, is this: that the sale was not of the

perfected Appel machines, but of imperfect machines, in the experimental stage of development. Appel, the inventor, was employed by the Cleveland Paper Company, at Cleveland. October 17, 1878, the Cleveland Paper Company made a contract with the Lincoln Paper-mill Company, of St. Catherine's, Ontario, for two Appel machines. One of these machines was delivered in January, 1879, and the second in June of the same year. The testimony, however, is conclusive on the point that these machines made imperfect bags, and that it took more than a year after the receipt of the first machine to perfect it. Appel himself went to Canada to aid in perfecting the machine. As to the third Appel machine, called the Pettee machine, the evidence is by no means clear or satisfactory that it was in public use prior to September 29, 1879. Whatever use of this machine took place before this date seems to have been of an experimental character. If the machines sold or used prior to September 29, 1879, were not capable of working the process, then it cannot be said that the process invention was sold or in public use for more than two years prior to the application for the patent in suit. There was no real invention of the process until a machine was constructed to work the process. *Union Manuf'g Co.* v. *Lounsbury,* 2 Fish. 389.

Upon careful consideration, I am of opinion that none of the defenses urged against the validity of the Appel patent in suit are good, and that the patent should be sustained. Decree for complainants.