ROWE v. BLODGETT & CLAPP CO.

(Circuit Court, D. Connecticut. August 14, 1900.)

No. 936.

1. PATENTS—DESIGNS—LIMITATION AS TO SUBJECT OF PATENT.
    Design patents refer to appearance, and not to mechanical utility, and are intended to apply only to matters of ornament, in which the utility depends upon the pleasing effect imparted to the eye, and not to any new function. A calk for a horseshoe is not a proper subject for such a patent.

2. SAME—HORSESHOE CALK.
    The Rowe design patent, No. 26,587, for a design for a horseshoe calk, is void because the article is not an appropriate subject for a design patent.

In Equity. Suit for infringement of a patent. On final hearing.

William E. Simonds, for complainant.

L. P. W. Marvin, for defendant.

TOWNSEND, District Judge. Bill in equity for infringement of patent No. 26,587, granted to Allen H. Rowe, February 2, 1897, for a design for a horseshoe calk. These calks, which are made separate from the shoes, are formed from square bars of steel on hand screw machines. The end of the calk which comes in contact with the earth is in the form of a truncated cone. On the other end are screw threads for attaching it to the shoe. Between the two ends a part of the bar is left untouched, forming a square base or shoulder. Calks of this character were very old. What complainant claims as new, and embodied in his patent, are two features,—a groove, cut by a distinct operation at the base of the threaded end of the calk, and a central "downward projecting curved part" on the surfaces of the base or shoulder extending upon the surface of the truncated cone. None of the defendant's calks has the groove. Complainant, however, claims that said groove is a negligible feature. The curved surfaces, irregularly and indefinitely formed, are found in most of defendant's calks. Defendant shows that the groove thus applied to horseshoes is old. Calks with such grooves were made in 1871. Patent No. 470,702, granted March 15, 1892, to W. Pierce Marsh, shows such a groove.

Furthermore, it is merely an adaptation of the old and well-known method of making set screws, and is used here to serve the same purpose. The downward projecting curved lines on the sides of the base or shoulder are only such changes from the prior art as would be made by the ordinary mechanic without the exercise of any inventive faculty, or are the result of mere accident or carelessness in forming the calks. The forming tool which is used in turning out these calks operates on the same principle as a hollow auger, or the ordinary pencil sharpener. It appears that, if the tool were run down sufficiently far upon the bar of metal, the base of the conical end of the calk described a circle, leaving the under side of the base or shoulder straight across on all four sides; but, if there chanced to be any variation in the size of the metal, or carelessness in manipulating the tool, a flat surface might be left on one or more of the sides of the base or shoulder, causing a curved line, like that claimed by complainant in his patent. In short, the configuration claimed by complainant as the essential feature of his alleged novel shape is such as one makes in sharpening a square pencil with the circular pencil sharpener. This contention was proved by showing the machine by which these calks are formed. The defendant further shows, by comparison of a calk made for complainant more than six years prior to the patent in suit with a calk made for him under the patent in suit and a calk sold by defendant, that the only difference between the three is in the degree of flat surface on the base or shoulder of the calk and the set-screw groove, and that, therefore, the three are identical in law. I decide this case, however, upon the broader ground that patents for designs are intended to apply to matters of ornament in which the utility depends upon the pleasing effect imparted to the eye, and not upon any new function. The advantage claimed by complainant for the increased flat surface afforded by the curved line, which is the essential feature of his patent, is to enhance the mechanical utility of the calk by thus making a stouter shoulder, which would not so readily become bruised out of shape, and which, therefore, could be more easily removed with a wrench, when worn, from the shoe. It is significant, in this connection, that the patentee first applied for this essential feature of downward projecting curved lines on the sides of the base as a mechanical invention, which application was rejected, and that he then attempted to cover the same feature by a design patent. Design patents refer to appearance, not utility. Their object is to encourage works of art and decoration which appeal to the eye, to the esthetic emotions, to the beautiful. A horseshoe calk is a mere bit of iron or steel, not intended for display, but for an obscure use, and adapted to be applied to the shoe of a horse for use in snow, ice, and mud. "The questions an examiner asks himself while investigating a device for a design patent are, not 'What will it do?' but 'How does it look?' 'What new effect does it produce upon the eye?' The term 'useful' in relation to designs means adaptation to producing pleasant emotions." There must be "originality and beauty; mere mechanical skill is not sufficient." Northrup v. Adams, 12 O. G. 430, Fed. Cas. No. 10,328, approved in Smith v. Saddle Co., 148 U. S. 679, 13 Sup. Ct. 768, 37 L. Ed. 606; Ex parte Parkinson (1871) Com. Dec. 251. A decree may be entered dismissing the bill.