### WEISGERBER v. CLOWNEY.

(Circuit Court, D. New Jersey. July 20, 1904.)

1. PATENTS—INFRINGEMENT—ROLLING CHAIRS.

The Weisgerber patent, No. 675,693, for "a rolling chair provided with an arm-rest, and a wheel-screen continuing downwardly from said rest, and extending from side to side of the frame below said rest, and swelled outwardly over the wheel," if not void for lack of patentable invention, is of narrow scope, and is not infringed by a chair in which the sides are extended downward in the same plane, and the wheels are placed inside of such extensions.

2. SAME—DESIGNS—MECHANICAL FUNCTION—NOVELTY.

A design patent is addressed to the eye, and is to be judged by its ability to please, and, while there is no objection to the article to which it relates being useful as well as ornamental, such a patent cannot be made to cover a mechanical function or construction. A design patent also, the same as any other, must be possessed of novelty.

3. SAME—INFRINGEMENT—DESIGN FOR ROLLING CHAIR.

The Weisgerber design patent, No. 35,043, for a design for a rolling chair *held* not infringed, on evidence which showed that defendant's chairs, i' they would otherwise infringe, were constructed and in use by defendant prior to complainant's application for the patent.

In Equity. Suit for infringement of letters patent No. 675,693, for a rolling chair, granted June 4, 1901, and No. 35,043, for a design for such chair, granted September 3, 1901—both to Harry E. Weisgerber. On final hearing.

E. Hayward Fairbanks and H. C. Kennedy, for complainant.
Horace Pettit, for defendant.

ARCHBALD, District Judge.[1] There are two patents in controversy in this case—one mechanical and the other for a design; the subject of each being a rolling chair such as is in vogue on the board walk at Atlantic City, where both the parties to this litigation are engaged as competitors in furnishing these vehicles for public use. The mechanical or functional patent was applied for December 7, 1900, and obtained June 4th following; and the improvement which it covers consists in providing such chairs with screens or guards for the

¶ 3. See Patents, vol. 38, Cent. Dig. § 66.
[1] Specially assigned.

wheels and the adjacent running gear, to prevent the contact of skirts and garments. In wheeling these chairs through the crowds which throng the thoroughfares where they are used, and also in getting in and out of them, there is danger that the dresses of ladies will be blown against the axles and be marred with grease, and even the trousers of men are not entirely exempt. It was definite public complaint on the subject that led to the present device. Notwithstanding this useful purpose, however, it is a question how far the simple providing of a screen or guard for the wheels of such a conveyance involves the exercise of invention. There is nothing new in the idea, even with regard to rolling chairs; the only difference being that heretofore the wheels have not been so completely screened or covered. But as a mere matter of extension or enlargement, this would not seem to be an inventive advance, nor to involve anything more than adaptive mechanical skill. It is not necessary, however, to definitely decide the question of invention, because it is clear that, whatever be the legal value of the patent, the defendants do not infringe its terms. The first claim, which is the one relied on, is as follows:

"(1) A rolling chair provided with an arm-rest, and a wheel-screen continuing downwardly from said rest, and extending from side to side of the frame below said rest, and swelled outwardly over the wheel."

It is a mere repetition of the words of the claim to say that the guard or screen which is so provided must, as an essential characteristic, "swell outwardly over the wheel"; and this calls, if not for a strictly convex surface, at least for one that bulges or bellies outwardly, and is not satisfied by one that is flat. A reference to the specifications, as well as to the diagrams which accompany the patent, confirms this view:

Says the inventor in describing this part of the device in the specifications:

"G designates hangers constituting screens on the sides of the frame of the body below the arm-rest portions: the same approaching the ground or road; the lower portions of said hangers being swelled outwardly, forming fenders or inclosures, H, as guards for the wheels; said hangers preventing the passers-by from contacting with the wheels, while the fenders, owing to the swelled or segmental form, deflect the garment of the rider from the wheels; it being noticed that the widest portions of said fenders are over what may be termed the 'middle' of the wheels, while said fenders taper toward the floor of the chair."

Both screen and dependent fenders, as thus described, are required to be of a swelled or segmental—that is to say, a bulging—form, and this is all that was patented. The inventor tried for more in his application, endeavoring to cover the general idea of a screen for the wheels of such chairs, but he was cut down in the course through the Patent Office to one of the particular fashion set forth in the claim, and to this he must be confined. But on this the defendants do not infringe, as a reference to the following diagram, which represents the chairs they use, will plainly show:

The wheels here are, no doubt, screened or covered, but it is accomplished by placing them under the body of the chair, which is extended squarely over them; the sides being projected downwards below the axles in order to do so. It is contended that they thereby "swell outwardly" over the wheels, within the meaning of the patent, but this is a forced view. The fact is that the screens, like the sides of the chair of which they are the prolongations, are perfectly flat, and lie in exactly the same plane. All the similarity resides in the circumstance that they have the same general function as the screens devised by the complainant, which is not sufficient, however, to make out an infringement.

To properly understand the scope of the design patent, it will have to be quoted entire. "Be it known," says the patentee, "that I, Harry E. Weisgerber, * * * have invented and produced a new and original design for a rolling chair, of which the following is a specification; reference being had to the accompanying drawing forming part thereof: The leading feature of my design * * * is first a body having a depending wall on the back thereof, and next vertical passages in said wall. In the accompanying drawing, which represents a perspective view * * * embodying my design, A designates the body; * * * B, the wheels; C, * * * the back; * * * and D, * * * a depending wall on said back. In said wall are vertical passages, E, through which the wheels partly protrude. * * * What I claim as new, and desire to secure by letters patent, is the design for a rolling chair substantially as shown and described."

The drawing accompanying the patent which illustrates the design intended to be covered by it is as follows:

While the following represents the chairs of the defendants:

The question of infringement is to be determined by the comparative appearance of the two.

A design patent is addressed to the eye, and is to be judged by its ability to please. Rowe v. Blodgett & Clapp Co. (C. C.) 103 Fed. 873. There may be no objection to the article to which it relates being useful as well as ornamental, but the attempt to patent a mechanical function, under cover of a design, is a perversion of the privilege given by the statute. Rowe v. Blodgett & Clapp Co., 112 Fed. 61, 50 C. C. A. 120; Marvel Co. v. Pearl (C. C.) 114 Fed. 946; Eaton v. Lewis (C. C.) 115 Fed. 635. A design patent, also, the same as any other, must be possessed of novelty. Smith v. Saddle Co., 148 U. S. 679, 13 Sup. Ct. 768, 37 L. Ed. 606; Paine v. Snowden, 50 Fed. 776, 1 C. C. A. 661. Subjected to these tests, it is a question whether the present patent is of any validity. The extension of the back and sides of the chair, by which

screens for the wheels are formed, is functional rather than ornamental, whatever view to the contrary may have been expressed by the defendant Mrs. Clowney; neither would it seem to involve anything inventive to modify to that extent existing forms. Paine v. Snowden, 50 Fed. 776, 1 C. C. A. 661. But without stopping to enlarge on this idea, it is clear upon other grounds that the complainant as to this patent also has no case.

From the design standpoint, in which the guide is the eye, it requires hardly more than the most casual observation to perceive that there are several material points of difference between the defendants' chair and that which is portrayed in the patent. With regard, for instance, to what is declared to be the leading feature of the design; the depending wall in the back, as represented in the drawing, extends down even with the side screens; while in the defendants' chair it stops somewhat short of this, making a break in the lines, and producing a less pleasing effect. The vertical passages also in the one are cleaner cut, extending only partway up to the body of the chair, and are supplemented by two smaller auxiliary slots, through which the handle bars protrude; while in the other, these openings go entirely up to the body, the wicker work of either side being strengthened with dowel posts; and there are no auxiliary slots. In general configuration, also, the two chairs are different. That of the complainant has a stiff, square back, with square sides, the roll on the top being carried down the edges of the back to the bottom of the screens, and not extended out over the arms, which are given distinct and separate rolls of their own, terminating abruptly at the end; while in that of the defendants the back slightly inclines, and has decidedly rounded corners, and the roll or braid on top of the back continues out over the arms, and is carried down the front of the chair to the floor. The complainant's also has no dasher, while the defendants' has a very prominent one; and the wickerwork of the two chairs differs; that of the defendants being a basket pattern ornamented on back, sides, and depending walls, with diamond-shaped figures, while that of the complainant is a plain crosshatch. There are other slight distinctions, but these are enough. Whether taken singly or in general effect, the features of the defendants' chair constitute material variations from the design as set forth in the patent, and relieve the defendants from the charge of infringement upon it.

But assuming, for the sake of argument, that there are no such differences, after all, as we have found, the complainant is met by the fact that he was not the first to put out a rolling chair of this particular description. The patent was applied for August 2, 1901, but it is in evidence that on June 5th, two months before that, Mrs. Clowney, the principal defendant, purchased and had in use one of the chairs of which complaint is now made. This chair did not originate with her, but was manufactured by the Philadelphia Baby Carriage Company, from whom she ordered it May 14th; and it was followed by some 20 others from the same place in the next two months. These dates are not made to depend on the uncertain memory of witnesses, but are substantiated by documentary evidence in the way of bills and shipping receipts. The complainant himself also proves that on June 24th one of these

chairs was rented by him of the defendants, and taken to a photographer for the purpose of obtaining a picture to be used as evidence of infringement in this case. Further, if Harry Bellis, who is connected with another rolling chair establishment at Atlantic City, is to be believed, he saw chairs of this pattern at the Philadelphia Baby Carriage Works in March, 1901, where they were being shipped to the Pan American Exhibition at Buffalo, which occurred that year; and he ordered some for his own use, which were delivered about the same time as those to Mrs. Clowney. Nor is this by any means all the evidence there is upon the subject. It is testified by Mr. Bloch, the proprietor of the factory referred to, that the first chair delivered to Mrs. Clowney was designed and put together as a sample in the summer of 1900; this date being fixed by reference to the removal of the office and salesroom, which occurred in July or August of that year, and which it preceded. Levi, a salesman and clerk, corroborates this with convincing details, as do Semisch, the foreman of the reed department, and Heinel, who constructed the frame. The latter remembers the circumstance that in August, 1901, the frame, which originally had a roll on top of the back and arms, was returned to have a braid put on, just as it now appears. Semisch also produces a so-called invoice book, in which at the close of that year he entered an inventory of some 10 of these chairs, which by that time they had constructed and had on hand. The reason why this style was not sooner put on the market is explained by Bloch, who says that they are always working a season ahead, and that it not infrequently happens that they have new styles which are not made use of for six or eight months. It is said that the company with which these witnesses are associated is interested in establishing a prior use, in order to defeat any suit which may hereafter be brought against it for infringement; but their testimony is too circumstantial and convincing to be put aside in any such way. It is also said that Bloch was to produce his books in order to substantiate his statements, which he never did. But a fire occurred while the testimony was being taken, which prevented it; and, while this leaves his testimony without the promised support, corroborated as it is by the others referred to, to say nothing of its own inherent value, it cannot be disregarded.

In view of the conclusion which is thus reached, it is not necessary to go into any extended discussion of the evidence produced by the complainant with regard to the use of this style of chair in the first part of 1901 by the rolling chair establishment where he was employed. There is quite a little to throw doubt upon this, and it is a question whether, standing by itself, the evidence would be sufficient to meet the burden cast upon the complainant of carrying back the date of his invention to a point where it would clearly anticipate the use by Mrs. Clowney indisputably shown in June. But without going into the matter, and conceding for this evidence all that could be claimed for it, it only goes back to February, 1901, and thus fails to meet the evidence of the defendants by which chairs of this pattern are shown to have originated in the factory of the Philadelphia Baby Carriage Works fully six months before.

While the case is fully disposed of by what has thus been said, it will n)t be inappropriate to observe that the evidence with regard to the

origin of the chairs of which complaint is made has a bearing upon the mechanical as well as the design patent.    For if it is contended that the screens on these chairs swell outwardly, within the meaning of that patent, in construction and function infringing upon it, then, being earlier in time, they anticipate it; the complainants' mechanical invention not being carried further back than December 7, 1900, the date of his application.

It being clear, therefore, that the bill cannot be maintained, a decree is directed to be drawn in favor of the defendants, with costs.