## WILLIAMS CALK CO. v. NEVERSLIP MFG. CO.

(Circuit Court, M. D. Pennsylvania. February 14, 1905.)

1. PATENTS—HORSESHOE CALK.

The Williams patent, No. 666,583, for a horseshoe calk, is void for double patenting, in view of the previous design patent to the patentee for the same device, or, if not, is for a combination of old elements, and only entitled to a very narrow construction, and, as so construed, *held* not infringed.

2. SAME—DESIGN AND MECHANICAL PATENTS—ANTICIPATION.

A design patent will operate as an anticipation of a subsequent patent to the same inventor, just as though issued to another person, where everything to be found in the one is portrayed in the other. Cary Mfg. Co. v. Neal (C. C.) 90 Fed. 725, followed; Collender v. Griffith (C. C.) 2 Fed. 206, dissented from.*

3. SAME—DOUBLE PATENTING.

A design patent will render void a mechanical patent subsequently issued to the same inventor within two years, as a matter of double patenting, where the two are indistinguishable in their characteristics and are manifestly the outcome of the same inventive idea.

4. SAME—PRIOR INVALID PATENT.

The fact that a prior design patent is invalid, because the subject of it is not within the law, will not save a subsequent mechanical patent for the same device from constituting a case of double patenting; the patentee having enjoyed a nominal, and for a time an apparently unquestioned, monopoly therefrom, and it not being open to him to set himself right for a mistake which he has made in the character of the patent by taking out another and different one for substantially the same thing.

* See, also, 136 Fed. 193.

**5. SAME—HORSESHOE CALK.**

A horseshoe calk, the whole value of which consists in the uses to which it can be put, and to which the mind of the inventor is therefore addressed, cannot be covered by a design patent.[1]

**6. SAME—DESIGNS—UTILITY OF—WORDS AND PHRASES.**

The utility intended by Rev. St. § 4929 [U. S. Comp. St. 1901, p. 3398], authorizing the granting of a patent for any new, "useful," and original shape or configuration of any article of manufacture, is artistic, and not practical. What is meant is that the design shall constitute something which is artistically worth the while, and is not frivolous or hurtful.

**7. SAME—INFRINGEMENT.**

Similarity to the eye of a person of ordinary intelligence and observation is what governs on the question of the infringement of a design patent. Useful or functional features cannot be resorted to to make this out.

**8. SAME—HORSESHOE CALK.**

The Williams design patent, No. 29,793, for a horseshoe calk is void, because the subject of it is not patentable as a design; also, if of conceded validity, *held* not infringed.

In Equity. Suit for infringement of letters patent No. 29,793 for a design for a horseshoe calk, granted December 13, 1898, and No. 666,583, for a horseshoe calk, granted January 22, 1901, both to John R. Williams. On final hearing.

Hervey S. Knight and Beers & Grambs, for complainant.
Archibald Cox and Walter Briggs, for defendant.

ARCHBALD, District Judge. It is to be regretted that the inventor did not at the outstart, as he did later, take out a mechanical, instead of a design, patent for his horseshoe calk; for it certainly is in its useful features that the whole value of the invention resides, and not in its pleasing configuration to the eye, whatever that may contribute to it; and, the contrary being the fact, I do not see how, all things considered, either patent can be sustained. So far as the mechanical patent is concerned, everything to be found in it is portrayed in the design patent, which thus stands as an anticipation, the same as though granted to another person, except as the one was applied for within two years after the other issued, and was to the same inventor. This was expressly decided by Judge Wheeler in Cary Mfg. Co. v. Neal (C. C.) 90 Fed. 725, where he observed:

"It is said that an inventor of a machine or manufacture may have a patent for the thing and another for the design of the thing; but the description of the thing would show the design, and an inventor cannot have a valid patent,

[1] The subject of design patents is now regulated by Act May 9, 1902, c. 783, 32 Stat. 193 [U. S. Comp. St. Supp. 1903, p. 408], whereby section 4929, Rev. St., is amended so as to read: "Any person who has invented any new, original, and ornamental design for an article of manufacture, not known or used by others in this country before his invention thereof, and not patented or described in any printed publication in this or any foreign country before his invention thereof, or more than two years prior to his application, and not in public use or on sale in this country for more than two years prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law and other due proceedings had, the same as in cases of inventions or discoveries covered by section forty-eight hundred and eighty-six, obtain a patent therefor."

applied for two years later, for that which is described in a prior patent to himself, any more than in one to another."

Conceding, however, that the mechanical patent is saved from being anticipated by the design patent in the present instance, because, although it was not granted until January 22, 1901; it was applied for December 28, 1899, which was within two years of the date of the design patent, which was December 13, 1898, it is nevertheless difficult to see how the two can stand together, so as to escape the charge of double patenting. A person cannot, of course, take out two patents for the same invention (James v. Campbell, 104 U. S. 356, 26 L. Ed. 786; Mosler Safe Co. v. Mosler, 127 U. S. 354, 8 Sup. Ct. 1148, 32 L. Ed. 182; McCreary v. Pennsylvania Canal Co., 141 U. S. 459, 12 Sup. Ct. 40, 35 L. Ed. 817; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121); the reason being that the power to create a monopoly is exhausted by the first patent, and that a new and later patent for the same invention would operate to extend or prolong the monopoly beyond the period allowed by law (Odiorne v. Amesbury Nail Manufactory, 2 Mason, 28, Fed. Cas. No. 10,430). It does not detract from this that one is for a design and the other for a mechanical device, where, as here, the two are indistinguishable in their characteristics, and manifestly the outcome of one and the same inventive idea. It is true that the opposite view was expressed in Collender v. Griffith (C. C.) 2 Fed. 206, where a mechanical patent, taken out more than two years after a design patent, was sustained, even though the structure in both was the same; it being held that the purposes of the two patents were different, one being for the shape and the other for the mechanical combination involved. But this does not seem to meet the objection, nor did it prevent a contrary ruling from being made in Cary Mfg. Co. v. Neal (C. C.) 90 Fed. 725, already referred to, in the same court. Even if the case can be likened to process and product, each of which may, under some circumstances, be separately patented (Thomas v. Electric Porcelain Mfg. Co. [C. C] 111 Fed. 923), it is to be observed that even there there is no unrestricted right (Mosler Safe Co. v. Mosler, 127 U. S. 354, 8 Sup. Ct. 1148, 32 L. Ed. 182). And where, as here, the whole value of that which is the subject of the design patent is to be found, as already pointed out, in its useful, and not in its artistic, features, the proof of which is shown in the attempt to have it extend to both, a subsequent mechanical patent, the purposes of which, without any new inventive idea, is simply to protect the useful part of the same invention, certainly presents a case of double patenting, which cannot be sustained. It is true that in the present instance, as we shall presently see, the design patent is itself invalid, not being within the purview of the law; but that does not change the result. Not only has the patentee, by means of it, enjoyed a nominal, and until now an apparently unquestioned monopoly, with all the benefits accruing therefrom, but it was not open to him to set himself right for a mistake which he had made in the character of the patent by taking out another and different one for substantially the same thing. Whether this could have been accomplished by a surrender and reissue I will not undertake to say.

These observations, however, are somewhat obiter, for, giving the mechanical patent its full force, it is clear that the defendants do not infringe. The single claim is for—

"A horeshoe calk constructed with an attaching screw-shank, a square base, radial blades having vertical flattened beveled edges, vertical straight sides, and rounded, beveled, outwardly-tapering knife-edge lower ends providing a conoidal-shaped tread, and arching recesses between the blades beneath the square base, the widening of the inner ends of the blades to form the arching recesses preventing the calk from becoming completely worn down so as to leave a wrench-hold."

These features are shown in the following diagrams:

The object to be attained as stated by the inventor is "to provide an article  *  *  *  which may be forged from high-grade calk steel, which will be more effective and durable in use, will avoid liability of turning the animal's ankles, will maintain its advantageous features until practically worn out, and when worn out will still be in a condition to permit convenient removal without taking off the shoe." Assuming that a calk of this form is possessed of the advantages claimed for it, and that the exact combination is not to be found in the prior art, almost every feature of it, taken by itself, undoubtedly is. It was not new, for instance, to attach the calk to the shoe by a screw shank; this—if not, indeed, an obvious arrangement—being shown in some nine different previous patents from the Jorey (1859) down. Neither was it new to have a square base (Jorey, Chase, Lesueur, Hall and Petzold), nor radial cruciform blades (Chase, O'Neill, De Pass) having vertical straight sides (Chase, De Pass), nor arching recesses between the blades (O'Neill, Mason, De Pass, De Sales), nor even a conoidal-shaped tread (Mason). Radial blades, with vertical sides, and somewhat rounded knife edge lower ends, are also shown in a design patent issued to the same inventor in 1896; while the form of calk (Exhibit 5) put out and sold by him in the spring of 1897—which was one of the steps, as he says, leading up to the present device—has every feature that is now relied upon except the rounding of the lower

edges by which a conoidal-shaped tread is produced. In addition to this, a calk with a conoidal tread (Exhibit 11) has been manufactured by the Neverslip Company, defendants, for nearly 20 years. With this record against the inventor; it is a matter of some doubt just what point of patentable novelty he is entitled to claim. But without stopping to definitely determine that question, it is clear that the invention is of exceedingly limited range; and that, restricting it as we must, the defendants, as already stated, do not infringe.

It is true that there are many points of similarity in the defendants' calks. A screw shank, for instance, is employed, in conjunction with a square base (Exhibit 20), although in the later forms (Exhibit 10, Exhibit A) this is modified into one with rounded corners. There are also radial blades, having vertical, flattened, beveled edges, and, to a certain limited extent, rounded, beveled, outwardly tapering, lower ends, providing a conoidal-shaped initial tread. Some forms also show arching recesses between the blades, although in others these recesses have a somewhat square shoulder; but, whether one or the other, the widening of the inner ends of the blades, by which the particular form is produced, has the effect claimed in

the patent of preventing the calk from becoming worn down so but that a suitable and safe wrench-hold is left. But all these features are old, as well as the functions assigned to them, and the defendants, in order to infringe, must have adopted not merely a part of the invention, but the whole. The significant point of difference is that where the claim calls for blades with strictly vertical sides, developing into completely rounded ends, the defendants, after narrowing down their calks by tapering the sides, cut off the ends of the blades so as to form a sort of truncated pyramid or cone, the cruciform radial effect being at the same time retained, and an effective gripping surface provided, by a notching or pointing of the ends. Form here is essential, and equivalency of function counts for little, in view of the prior art, as well as the express terms of the claim. The old features adopted had substantially the same functions in the calks in which they were first employed, which the inventor could not, therefore, monopolize. Neither could he make these features his own by assigning certain special functions to them, since these necessarily resided in them in previous devices where they appear, even though not expressly claimed. Arched recesses, formed by the widening of the inner ends of the blades, for instance, were equally effective in the De Pass, the O'Neill, and the De Sales, to prevent the calk from getting worn down so close as to leave no wrench-hold; and rounded lower edges on the blades, to provide a conoidal tread, not only appear, as already pointed out, in the Mason, or the old "Neverslip" peg calk, manufactured by the defendants for years, but is a form into which every calk is likely to get by the wearing away of the corners, which, as pointed out by

the examiner, is calculated to make every one who takes advantage of these common devices an infringer in the mere course of ordinary use. However much, therefore, in some respects, the defendants' calks approach to the invention in suit, they differ from it in others to such an extent that, giving all the effect that can be legitimately claimed for the features which they have in common, infringement is not made out.

I reach a conclusion adverse to the complainants also on the other branch of the case. It was never the intention of Congress, in allowing patents for designs, to duplicate the existing law, so that an inventor, at his option, could cover that which had nothing but a practical value either with a design or a mechanical patent, or, as is now claimed, with both. A distinct class of inventions, having characteristics and features of its own, was intended to be reached by the statute, and to this it is to be confined. It is, indeed, a perversion to attempt to extend it to anything else. Weisgerber v. Clowney (C. C.) 131 Fed. 477. It has been accordingly expressly decided that a horeshoe calk, such as we have here, was not patentable as a design (Rowe v. Blodgett [C. C.] 103 Fed. 873, 112 Fed. 61, 50 C. C. A. 120); nor a syringe (Marvel v. Pearl [C. C.] 114 Fed. 946); nor plates to hold together the ends of machine belting (Eaton v. Lewis [C. C.] 115 Fed. 635); nor a thill coupling and washer for carriages (Bradley v. Eccles, 126 Fed. 945, 61 C. C. A. 669). In each of these instances it is manifest that artistic configuration, addressed to the eye, practically counted for nothing, the whole value of the device being found in the uses to which it could be put, to which the mind of the inventor was naturally addressed. To say that the form into which such articles are cast adds to their atractiveness to a purchaser, and thus enhances their salable value, enlarging the demand, merely obscures the issue. It is true that this is recognized in Gorham Co. v. White, 14 Wall. 511, 20 L. Ed. 731, as one of the objects, in providing for design patents; but that it thereby made the law applicable to anything and everything, without regard to its character, or whether it was otherwise within the purview of the statute, by no means follows. Neither is anything to the contrary to be made out of the word "useful" [1], to be found in the statute. The utility intended by this is artistic, and not practical, as is implied from the context. The design, with respect to the article of manufacture for which it is devised, must contribute something which is artistically worth the while, and which is not hurtful or frivolous. Westinghouse Mfg. Co. v. Triumph Electric Co., 97 Fed. 99, 38 C. C. A. 65; Rowe v. Blodgett (C. C.) 103 Fed. 873; Marvel v. Pearl (C. C.) 114 Fed. 946. In re Seaman, 4 O. G. 691; Ex parte Norton, 22 O. G. 1205;

[1] Rev. St. § 4929 [U. S. Comp. St. 1901, p. 3398]: "Any person who, by his own industry, genius, efforts, and expense, has invented and produced any new and original design for a manufacture, bust, statue, alto-relievo, or bas-relief; * * * or any new, useful, and original shape, or configuration of any article of manufacture, * * * may * * * upon due proceedings had, the same as in case of inventions and discoveries, obtain a patent therefor."

Ex parte Schulze-Berge, 42 O. G. 293. This is not to say that that which is covered by a design may not also have useful features (Hecla Foundry Co. v. Walker, L. R. 14 App. Cas. 550); but only that, where the article to which it is applied has nothing but that which is useful or functional to commend it, a mechanical, and not a design, patent is the proper one to take out. In the present instance, conceding that there may be artistic lines in the configuration of the complainants' calks, these add nothing to it, and amount to nothing, except as they make for its greater usefulness. In that lies its real value, and it is that which the inventor has contributed to the world, if he has contributed anything. As applied to a horseshoe calk, which is made for use in ice, snow, and grime, art is wasted, and display so inappropriate as to be frivolous, and so not useful, within the meaning of the law.

But, even if the patent is not open to these objections the defendants do not infringe. The following diagrams will show what is covered by it:

FIG. I.

FIG. II.          FIG. III.

FIG. V.

FIG. IV.

"As shown in the drawings," says the inventor, "the leading or material features of my design consist in an angular base, radial wings having rounded corners and ends arched from corner to corner, U-shaped grooves formed between the wings, and inclined portions from the inner ends of the grooves to the sides of the base." Imitation—and close imitation at that—is essential to make out infringement of a design. There may be some range of equivalency, but it is necessarily small. Similarity to the eye of the ordinary man is the test (Gorham Co. v. White, 14 Wall. 511, 20 L. Ed. 731) ; and that the defendants' calk would be mistaken for that of the complainants by any one of ordinary intelligence and observation, who was reasonably familiar with either, I am not prepared to believe. Upon the occasions testified to when there has been any apparent confusion the parties evidently did not know. Looking to the plain difference in configuration between the two, it is only to be explained upon that basis, and they had no right to be confused if they were. Moreover, by giving to their calks the name of "Cant-Slip," where the defendants for years had made use of the name "Neverslip," the complainants invited confusion, if they did not actually bring it about; and how far this may have contributed we cannot say. Of course, the useful or functional features of a design cannot be resorted to to make out infringement. Hecla Foundry Co. v. Walker, L. R. 14 App. Cas. 550; Cone v. Morgan Envelope Co., 4 Ban. & Ard. 107. And yet that is what the complainants are compelled to rely upon, in the final analysis here, to sustain the charge. The constant temptation and effort to extend design patents so as to take in functional features on the issue of infringement is one of the strongest reasons for holding to the construction of the law which is adopted above. At most, the utility is an incident. If calculated to serve a useful purpose, it is nevertheless open to any one to attain the same end by using an article which differs from the other in configuration and shape (Hecla Foundry Co. v. Walker, supra) ; and that is all that has been done here.

Let a decree be drawn dismissing the bill, with costs, both on the ground of the invalidity of the patents and because they have not been infringed.