**AMERICAN MORGAN CO. et al. v. JOY MFG. CO.**

**No. 3235.**

District Court, W. D. Pennsylvania.

Nov. 14, 1939.

Brown, Critchlow & Flick, of Pittsburgh, Pa., and C. M. Nissen and H. H. Hittson, both of Columbus, Ohio, for plaintiff.

Oberlin, Limbach & Day, and Jno. F. Oberlin, all of Cleveland, Ohio, Rose & Eichenauer, of Pittsburgh, Pa., and Harold W. Hawkins, of Franklin, Pa., for defendant.

SCHOONMAKER, District Judge.

We have a patent-suit in which each party is suing the other for the infringement of patents in the field of loading ma-

chines specially adapted for use in loading coal in mines.

Plaintiffs charge defendant with 'the infringement of its two Morgan Patents, Nos. 1,473,157 and 1,729,177, in its use of a coal-loading machine, comprising relatively laterally swingable articulated frame members, having a coal-carrying conveyor extending throughout its frame members. That subject-matter is claimed to be covered by claim 34 of Patent No. 1,473,157. Likewise it is charged that defendant infringes claims 8, 9, 16, 45, 46, and 50 covering an articulated frame structure in which the articulated members are laterally swingable, with certain added accessories and improvements to provide a continuous passageway for coal to be loaded.

The defendant, in its counterclaim, is charging the plaintiff with the infringement of all the claims of Arentzen Patent No. 1,785,402 for a coal-loading machine comprising relatively swingable articulated frame members having a single carrying conveyor extending therethrough.

The American Morgan Company, plaintiff, owns the legal title to the patents of Morgan in suit. The Jeffrey Manufacturing Company, the other plaintiff, is the exclusive licensee of the Morgan patent, and is one of the oldest and largest manufacturers of mechanical equipment, including loading machines for use in coal mines. However, neither plaintiff has ever manufactured or sold coal-loading machines which are constructed and operated in strict accordance with the Morgan patents in suit.

The defendant, Joy Manufacturing Company, is successor to the Joy Machine Company. It owns the Arentzen Patent No. 1,785,402, the subject-matter of the counterclaim. Since its organization in 1919, the Joy Machine Company, and its successor, the defendant, have been engaged in the manufacture and sale of mechanical loaders designed for use in coal mines. These machines, the defendant contends, were built in accordance with the teaching of Joy patent issued June 10, 1919, on an application filed November 18, 1916. By 1922, the Joy Machine Company had perfected and placed on the market a coal-loader known as 4-BU loader, which followed the teachings of the Joy patent. On this subject the United States Department of Commerce, in a bulletin published in 1930, and entitled "Coal in 1928," makes this statement: "the commercial history of the loading machine may be said to date from 1922, the year when the first Joy 4-BU's were placed on the market, thereby becoming available to operators generally."

Subsequently, defendant put on the market its 5-BU and 6-BU type loader. The 5-BU was provided with a second independently swinging delivery conveyor, while the 6-BU was substantially of the same construction as the 4-BU. In 1928, defendant developed and placed on the market its 7-BU loader, which is charged to infringe the Morgan patents in suit. These loaders differ from the 4-BU and the 6-BU type only in that the conveyor is made laterally, as well as vertically, swingable. This conveyor, the defendant contends, is manufactured under defendant's own Arentzen Patent No. 1,783,402.

The application on which Morgan Patent No. 1,473,157 issued on November 6, 1923, was filed on April 30, 1913. The application on which Morgan Patent No. 1,729,177 issued on September 24, 1929, was filed on December 8, 1917. Neither the plaintiffs, nor anyone else, have ever constructed and operated coal-loading machines constructed and operated in accordance with the teachings of either patent. The defendant's 4-BU loader, with conveyor having vertically swingable section, was developed and placed on the market as early as 1922, and before the first Morgan patent issued. The defendant's horizontally articulated conveyor which was incorporated in its 7-BU loader and other loaders of the same type, was developed in 1928 before the second Morgan patent.

The plaintiffs did not charge defendant with infringement of either of these patents until May 1, 1936. No explanation is given of the delay. In the meantime, defendant greatly expanded its business in its loading machines and made large investments in connection therewith. In this situation, we are of the opinion that plaintiffs are not entitled to injunctive relief, and are thereby estopped by their laches from pressing their suit for infringement.

Even if this were not so, we cannot find that the defendant has infringed the claims of the Morgan patents in suit. The plaintiffs' patents are properly classed as paper patents, and are, therefore, to be strictly construed, and are not entitled to any large range of equivalents. The coal-loading-machine art developed quite independently of them. The defendant de-

veloped its loading machines while the applications for the plaintiffs' patents were pending in the Patent Office.

Claim 34 of Patent No. 1,473,157 is in suit. It reads as follows: "In a loading machine, the combination with a supporting frame, of a supplemental frame pivotally connected thereto for swinging adjustment relatively to said supporting frame, and a single endless conveyer extending from one end of said supporting frame to the opposite end of said supplemental frame for operation throughout the various adjustments of said supplemental frame relatively to said main frame."

It will be noted that the patent is not limited in its teaching to any particular field of use, though reference is made in the specifications to special adaptations of the loading mechanism for loading coal in mines. The claim declared upon refers to "a loading machine" with no limitation of its use on mobile loading machines. The loading machine of this patent is designed, when in use, to rest directly on the floor, and is held in place by jacks extending from floor to ceiling, and step-by-step forward movement of the machine may be obtained only by loosening first one set of jacks and then another.

In, the prior art, we find loading machines which consisted of a supporting frame and a supplemental frame pivotally connected therewith for swinging movement in a vertical direction in combination with a single endless chain-conveyor comprising a chain extending from one end of the supporting frame to the opposite end of the supplemental frame for operation throughout the various adjustments of said supplemental frame relative to the main frame. See Bailey Patent 100,103, February 23, 1870; Loader Patent 181,694, August 29, 1876.

■ Likewise, such loading machines were known in which the supplemental frame was pivotally connected to the supporting frame for movement in a horizontal direction. See Dodge Patent 439,487, October 28, 1890; Dodge Patent 476,616, June 7, 1892. The Dodge patents disclose a relatively large stationary loader for gathering and loading coal from a pile in a yard. In this connection, it will be noted that claim 34 of this Morgan patent is not limited to a mobile loader nor to a machine of any particular size. A loader built in accord with Dodge Patent 476,616, has been in commercial use at the Coalburg storage plant of the Erie Railroad Company at Rochelle Park, New Jersey, since 1905. If we compare claim 34 of the Morgan patent with Dodge 476,616, we find that every element of the claim finds a counterpart in the disclosure of the Dodge patent. Neither the Morgan specification nor claim 34 distinguishes its mechanism by reference to a loading machine, for the reason the Dodge conveyor is designed, and has ·actually been used for years to load coal from a pile onto cars. None of the claimed elements of the Morgan patent has any reference to the size of the loading machine. We cannot see that the size of the machine has anything to do with invention. To reduce the size of a loading machine so that it would operate in a coal mine, would not spell invention, as the courts have held that invention is not achieved by any mere change in size. Powers-Kennedy Construction Corporation v. Concrete Mixing & Conveying Company, 282 U.S. 175, 51 S.Ct. 95, 75 L.Ed. 278.

It will be noted that claim 34 is concerned solely with the loading mechanism which is stated in specification of the patent ·to include the following (page 15, line 107, et seq.): "* * * the loading machine includes a main frame having mounted thereon a main conveyer comprising an endless chain 181 and the flights 182. A swinging supplemental frame 112 is mounted on the main frame, and has connected thereto gathering means comprising a supplemental conveyer, as shown in Fig. 16. The main frame or supporting frame has the main conveyer so arranged thereon that its forwarding receiving portion is in an approximately horizontal plane closely adjacent the surface on which the machine is supported. The supplemental conveyer constitutes a receiving section pivoted to the forward end of the main conveyer."

As we read this claim 34 and the specification above recited, "the supporting frame" and the "supplemental frame" pivotally connected thereto are different elements. The supporting or main frame comprises the two-part frame structure, which includes a single hydraulic jack at the forward end and a pair of hydraulic jacks at the rear, which are relied upon to hold the framework in proper position. The "supplemental frame" is the "supplemental frame 112" referred to in the above-stated quotation from the specifications, and is the element which is pivoted for horizontal swinging movement on the foreward jack.

We cannot identify the words "supplemental frame" of claim 34, as referring to extension 193 of the conveyor-trough, as the plaintiff asks us to do.

The accused structure is defendant's 7-BU loader, which is mobile in that it is mounted on a crawler type of tractor, and does not have to be held in place while in operation by jacks extending from floor to ceiling as does plaintiffs' loading mechanism. It also lacks the supplemental frame 112 of the patent in suit pivoted on a jack. The frame of defendant's machine is a unitary structure, and there is no warrant for calling one part thereof a supporting frame, and another part thereof a supplemental frame.

The defendant contends that these Morgan patents do not disclose an operable structure, because when the chains are provided with sufficient slack, as suggested by the specifications, to permit the lateral movement of the front portion of the machine without stretching the chain, the loader will not operate, for the chains will clog and prevent movement. We have some doubt as to the operability of this device,—the demonstration of its operation by means of the model brought into court were not entirely satisfactory. However, we do not deem it necessary to pass upon this feature of the patents; and we have held that the defendant's accused structures do not infringe the patents in suit.

As to the second Morgan patent, No. 1,-729,177, we also have a loading machine which comprises essentially an elongated channel or trough extending in a horizontal direction longitudinally with gathering means extending in a general horizontal direction in advance of said channel. The trough or channel comprises two sections, a rear and a forward section, which are referred to in the specifications of the patent as a rear and forward truck. The forward section has a pivotal connection with the rear section, whereby the forward section is laterally adjustable. The forward section is provided with a scoop, which is the means used to gather material into the forward section of the machine by forcing the scoop beneath the coal by forward movement of the machine. The forward section on which this scoop is mounted may be moved rectilinearly for the purpose of gathering the material to be loaded. The means for moving the gathered material along the two sections of the machine consists of two horizontally disposed chains, the inner runs of which travel in parallel channels formed in the floor of the trough. The outer runs on the other and are covered by plates, so that the inner runs only contact the material.

In defendant's accused structure, we find a loading machine, the conveyor part of which comprises a trough or channel which extends from the extreme front and to the delivery-end of the machine. This trough or channel is supported on a single unitary framework mounted on a crawler type of tractor by means of which the machine, as a whole, is moved from place to place, as well as maneuvered for loading during the loading operation in the mine chamber. As is well understood with this type of tractor, it is possible by advancing or retracting one tread or the other, to swing the machine bodily, movement forwardly or rearwardly being accomplished by operating both treads simultaneously. The forward section of the conveyor trough or channel inclines downwardly from adjacent the point of support on the machine frame at an angle of about 30° to the horizontal or normal floor level. In order to place coal on the conveyor, special digging and gathering arms are employed. These arms are essential to the operation of the machine. Their construction and operation are substantially that disclosed in Joy Patent No. 1,306,064 issued June 10, 1919, on application filed November 18, 1916.

As we turn to the claims of this second Morgan patent in suit, we find that claims 8 and 9 call for the "forward section" of the conveyor to be laterally adjustable. Claims 8, 90, and 140 include the scoop element of plaintiffs' structure. Claim 45 calls for the two sections of the conveyor having abutting ends open and registering with each other and a pivotal connection between the abutting ends to permit lateral movement. Claim 46 has the element comprising curved walls at the abutting ends of the trough sections, which counsel for plaintiffs construe to be the walls 105 shown on the patent drawing, Fig. 4, and which counsel for defendant construe to refer to the curved walls 48 and 49 shown on said Fig. 4. Claim 50 brings in means for locking the two sections of the conveyor in relative positions and means for moving the forward section rectilinearly, for the purpose of gathering coal. Claim 14 calls for a machine operable in a low-roof mine.

We cannot find that defendant has infringed any of the claims in suit of this second Morgan patent. In the first place, as we have already said, there is no scoop on defendant's loaders, nor any scooping action in the operation thereof. Next, the forward section of defendant's machine has capacity only for vertical swinging. There is no mechanism in the forward section for lateral swing.

As we compare these claims with the defendant's accused structures, we do not find any forward section or rear section. Defendant's structure is a unitary structure mounted on a crawler type of tractor. It does not have the provision for the forward section to be laterally adjustable, as called for in claims 8 and 9. True, the defendant's machine may be maneuvered to gather coal, but that is not through any adjustment of a forward section of the machine. We do not find in defendant's structure the scoop element of claims 7, 9, and 140 of this Morgan patent. The coal gathering elements of the defendant's structure is the means employed to bring coal onto the loading machine.

We do not find in defendant's structure the means for gathering coal, i. e., the scoop or the means for lateral adjustment, which in plaintiffs' structure is of the forward section of its machine, as called for in claim 45.

We do not find in the defendant's structure the "Curved walls at the abutting ends of said trough sections" called for in claim 46. Plaintiffs' counsel would read this term as referring to the flexible portions 105 of the trough sections, as shown on Fig. 4 of the patent. We are of the opinion that it refers to elements 48 and 49 of Fig. 4 of the patent. These elements are not in defendant's structure. It will be noted in this connection that element 105 does not abut, but overlaps or telescopes near the juncture of the forward and rear sections. As to claim 50, we do not find in defendant's structure any locking elements to lock the forward and rear sections in adjusted position. Defendant's structure is not in two sections. It is a unitary structure mounted on a tractor. The lateral swinging movement of the discharge end of defendant's loaders is merely to deliver coal at a selected point. In plaintiffs' device, it is the forward section that is adjustable.

As to claim 14, which calls for a machine operable in a low-roof mine, we cannot see that there is any invention in making a machine that will go into a low-roof mine.

We therefore conclude that defendant does not infringe either of plaintiffs' patents; and the complaint will be dismissed. And in any event, even if defendant did infringe, there could be no recovery, as we have heretofore found that the plaintiffs are estopped by their laches from pressing their suit for infringement.

We will consider now the counterclaim in which defendant charges plaintiffs with infringement of its Arentzen Patent 1,785,402, which issued December 16, 1930, on an application filed December 26, 1928. All three claims of this patent are in suit. This patent relates to a conveyor organization, which is described in the patent specification as follows:

"This invention relates to a conveyer organization of the endless belt type, the frame of which comprises two longitudinally alined, articulated abutting sections, one of which sections is adapted to have horizontal, radial swing or adjustment relative to the other; the traveling, material-actuating mechanism is of the endless chain and scraper type which is adapted to actuate material in continuous, uninterrupted movement over both sections of said conveyer.

"The object of this invention is, to supply a conveyer having a receiving end or section, comprising a stationary frame for the reception of material, goods or merchandise of nearly every description and a delivery section having a free end which may be moved horizontally through an arc of at least 90 degrees in extent and deliver its load continuously along said arc or at any desired point or points thereof."

All claims of this patent are in suit. We cite claim 3 as illustrative: "3. A conveyer organization having a conveyer means of the endless chain and scraper type and comprising in combination a main frame consisting essentially of two articulated, longitudinally-alined, abutting sections one of which is horizontally, radially adjustable relative to the adjacent abutting end of the other section, a deck for said radially-adjustable section, a deck for said other section, the form and relative arrangement of the adjacent ends of said decks being such that material may be moved uninterruptedly thereover at any position of adjustment of said adjustable section, a vertically-extending flange positioned at each

side of said decks each provided with a laterally flexible portion adjacent the area of articulation of said sections, scrapers arranged to travel upon said decks between said flanges for the movement of material, an endless chain connected to said scrapers and transmitting movement thereto, means operative to drive said chain, and means for effecting adjustment of said adjustable section."

By disclaimer filed in the Patent Office on October 29, 1938, the assignee of the patent, the defendant in this case, filed a disclaimer defining in more limited terms the "conveyor means of the endless-chain type."

Arentzen utilizes two conveyors, a gathering element and a delivery element. The gathering conveyor slopes upwardly from the floor and delivers the material gathered at the forward end of the machine into a hopper in the discharge-end of the hopper, whence it is carried to the point of discharge. The charge of infringement is based entirely on the construction of the delivery section of defendant's Jeffrey L-400 loader. The defendant alleges that novelty rests in the Arentzen patent in the combination with an articulated conveyor, one section of which is adapted to swing laterally with respect to the other, in which the material-conveying means comprise an endless chain which extends around the floor or deck of the conveyor trough or channel so as to lie above and below the same in a plane substantially vertical thereto.

The defense is that the Arentzen patent is invalid because of the prior art disclosed in the two Morgan patents in suit, and that the disclaimer filed by defendant renders the patent invalid because of delay in filing it. It seems the defendant wrote the Jeffrey Manufacturing Company about the alleged infringement by Jeffrey of the Arentzen patent. Jeffrey, through its counsel, replied on May 1, 1936, contended that the Arentzen patent claims were completely anticipated by the two prior Morgan patents here in suit.

■■■ The plaintiffs' complaint in this case was filed August 25, 1936. The defendant's answer and counterclaim on the Arentzen patent were filed March 31, 1937. The disclaimer was filed October 29, 1938, and notice thereof was served on plaintiffs on February 1, 1939. We cannot find that this is undue delay in the instant case. No court has found the original claims of this patent invalid. As we view the law, the patentee was not obliged to disclaim any part of his claims until they have been passed upon by the highest court to which the case could be taken. See O'Reilly v. Morse, 15 How. 62, 56 U.S. 61, 121, 14 L. Ed. 601; Ensten v. Simon Ascher & Co., 282 U.S. 445, 454, 51 S.Ct. 207, 75 L.Ed. 453; Excelsior Steel Furnace Co. v. F. Meyer & Bro. Co., 7 Cir., 36 F.2d 447, 449. Therefore, we hold the disclaimer in the instant case to be timely, because no court, at the time the disclaimer was filed, had held the original claims of the Arentzen patent invalid. But, as the disclaimer was filed after the counterclaim was filed, it may be effective to deprive the defendant of costs on his counterclaim, if the court finds the claims, as restricted by the disclaimer, to be valid and infringed. See Ensten v. Simon Ascher & Co., supra.

■■■ The plaintiffs further urge the court to hold the claims of the Arentzen patent invalid, because the defendant has brought into his claims a new element, i. e., a particular type of endless-chain conveyor, towit, "a single endless chain that extends around said decks so as to lie above and below the same in a plane substantially vertical thereto." This, the plaintiffs claim, is adding a new element to the three claims in suit, which cannot be done, under the ruling of the Supreme Court in Altoona Publix Theatres v. American Tri-Ergon Corp. et al., 294 U.S. 477, 490, 491, 55 S.Ct. 455, 79 L.Ed. 1005. However, we cannot see that defendant has introduced a new element by its disclaimer. The endless chain was in the original specification, and, by the disclaimer, is limited to a particular type of endless chain.

■■■ Plaintiffs also contend that the Arentzen patent is invalid, because the disclaimer defines a different invention than that of the original patent. We cannot find that the disclaimer in the instant case does that. As we view the disclaimer, it limits the claims in suit to a specific type of endless chain, thereby bringing the disclaimer within the class where a claim is limited to a specific type of the general class to which it was applied. See Altoona Publix Theatres v. American Tri-Ergon Corp., supra.

■■■ As to the contention of the plaintiffs that the three claims of the Arentzen patent, as modified by the disclaimer, are invalid because the only novel element in-

troduced rests in the particular type of endless chain used, which performs no new function in the combination, and therefore the claims are invalid under the doctrine of Lincoln Engineering Co. v. Stewart-Warner, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008, there is merit in this contention. As we view the case, Arentzen cannot, by inventing a new type of endless chain, or a new type of lateral swing of the rear section of an articulated conveyor, extend the monopoly of his invention to cover the entire field of loading machines by the mere use of a combination claim which combines his new or improved elements to old parts or elements which, when operated together, have no new function. His claim for invention should have been confined to the new element he introduced into the combination. As we have already said in regard to the Morgan patents, loading mechanisms were old in the art, and the plaintiff cannot recapture the old combination by merely changing the form of one or more of its elements. See Bassick Mfg. Co. v. R. M. Hollingshead Co., 298 U.S. 415, 424, 56 S.Ct. 787, 80 L.Ed. 1251; Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008.

We therefore conclude that defendant has not infringed the Morgan patents in suit, and that, even if it had, plaintiffs' laches would prevent any recovery, and that as to the Arentzen patent, by the subject-matter of defendant's counterclaim, we hold the claims of the patent to be invalid.